STATE OF NEBRASKA, APPELLEE, v. HAROLD L. MCGHEE,
APPELLANT.

167 N. W. 2d 765

Filed May 2, 1969. No. 36952.

Harold L. McGhee, pro se.

Clarence A. H. Meyer, Attorney General, and Harold Mosher, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ., and MORAN, District Judge.

MORAN, District Judge.

Defendant was tried before a jury and was convicted on two counts of feloniously assaulting law enforcement officials while they were engaged in the performance of their duties, and a third count of feloniously assaulting a law enforcement official with a dangerous weapon while he was engaged in the performance of his duties. Defendant was also charged with being a habitual criminal and in a separate trial to the court was found to be such. He was then sentenced to concurrent terms of 10 years on each of the 3 counts. His motion for a new trial was overruled and he has appealed.

On August 20, 1967, William S. Miller, the night marshal for the Village of Inglewood, and his deputy, Joseph R. Kochensparge, observed an automobile run a stop sign in Inglewood. The automobile was driven by a

woman, and there were two other occupants, one of whom was the defendant, McGhee. The automobile was stopped at Miller's request; however as he walked to it, the automobile was driven away. Miller and Kochensparge pursued the automobile in their vehicle and shortly after located it parked in an alley. They parked directly behind it. At that time the driver was out of the car walking toward Miller and Kochensparge. At the same time they observed the defendant run out of a nearby house carrying a 22 caliber rifle. He ran to the police car, shouted "I am going to kill everyone of you," and shoved the barrel through the window pointing it at Kochensparge who was seated next to Miller in the front seat. Neither of the officers knew then whether the rifle was loaded or not. Miller seized the rifle barrel and attempted to pull it away from the defendant, and Kochensparge radioed Fremont for help. The defendant succeeded in pulling the rifle away from Miller. The woman placed herself between defendant and the police car and told the defendant to stop. Miller and Kochensparge then got out of the police car and Miller told the defendant to put his weapon down and stand by the police car. Defendant, however, went back into the house with the rifle. He came out of the house without the rifle. At this point the Fremont police arrived and the defendant began to run to the house. Miller shouted to the Fremont police not to let the defendant in the house because he had a gun. Miller moved toward the defendant, defendant reached the house porch, turned to face Miller, and backed into the arms of Kochensparge who had moved around in back of him. Defendant tried to get loose and two other Fremont police who had just arrived helped subdue the defendant. During this episode officer Stack of the Fremont police department was kicked in the groin and bitten in the neck by the defendant, and defendant also bit the right finger of officer Fisher of the Fremont police department.

Defendant was taken to the police station. There

Miller asked defendant if the rifle was loaded, stating that he wanted to know but that defendant did not have to tell him. Defendant said that it was.

On August 21, 1967, the defendant appeared before a justice of the peace in Dodge County and was advised of his right to counsel at county expense. The preliminary hearing was adjourned at defendant's request to give him an opportunity to secure counsel. On August 22, 1967, defendant again appeared, and indicated that he did not want counsel at that time. He waived preliminary hearing and was bound over to the district court for Dodge County.

On August 31, 1967, defendant appeared before the district judge and informed him that he wished an attorney and had no funds to retain one. The court then appointed Max Powell to represent the defendant, and continued the arraignment. On September 22, 1967, defendant appeared with his attorney, Powell. The information was read and, through his attorney, defendant pleaded not guilty to all counts. Defendant's attorney requested a reduction in bond which was denied.

In the afternoon of the same day the defendant and his attorney again appeared before the trial judge and defendant asked the court to dismiss his attorney. The court then released Powell, and at defendant's request appointed William Rohn to represent him. The court then reset the trial date from November 7, 1967, to November 14, 1967.

On October 25, 1967, defendant appeared in court. It developed that William Rohn had filed an affidavit stating the defendant informed Rohn he did not want him to represent him, that defendant had contacted Harry Stevens for the purpose of representing him, that Stevens had conferred with defendant, and that Stevens was unwilling to represent the defendant. Both Rohn and Stevens recommended a psychiatric evaluation. The court then committed the defendant to the State Hospital at Norfolk, Nebraska, for a psychiatric evaluation.

On December 6, 1967, defendant appeared in court. The results of the psychiatric examination were set forth in a letter to the court. The letter was admitted into evidence and the findings of the staff at the hospital were:

"1. Harold L. McGhee possesses average adult intellectual ability and capacity and is not mentally deficient;

"2. He is not psychotic and is not mentally incompetent by reason of mental illness;

"3. He is fully able to cooperate rationally with counsel in his own behalf."

At the request of the defendant, the court then appointed William G. Line to represent him.

On January 10, 1968, Mr. Line and the defendant appeared in court. Line informed the court that defendant wished to dismiss him as his attorney. The court asked the defendant about this and defendant stated that he wished to dismiss Line as his attorney; that he hoped the court would not change the trial date; and that he would proceed to trial without an attorney. At this point defendant was advised of the charges against him, the possible penalty, and his rights under Article I, section 11, of the Constitution of Nebraska, including the right to counsel at public expense. Defendant requested a trial by jury and stated that he was ready to go to trial on January 15, 1968. He voluntarily and intelligently waived the assistance of counsel.

On January 15, 1968, just prior to trial, defendant again informed the court that he wished to proceed without counsel. The court then advised the defendant that it would have to follow the rules of procedure bearing upon admission of evidence and other rules of procedure that are known to attorneys but would be disadvantageous to the defendant because he was not familiar with them.

At the trial the defendant exercised his peremptory challenges and cross-examined witnesses. He offered no

evidence. The jury returned a verdict against the defendant the same day.

On January 24, 1968, pursuant to notice to the defendant on January 17, 1968, the court convened for the purpose of hearing on the habitual criminal charge. The court then explained the nature of the hearing to the defendant and informed the defendant that he had a right to counsel. The defendant stated that he waived that right. On motion of the State a continuance was then granted to January 31, 1968.

On January 31, 1968, the defendant appeared and again informed the court that he waived counsel. Certified copies of defendant's conviction of two felonies and commitments thereon were received in evidence without objection by defendant. Defendant offered no evidence. The court found the defendant to be a habitual criminal and deferred sentencing pending a presentence investigation.

On February 1, 1968, defendant appeared in court. He was advised of his right to be represented by counsel at that stage of the proceedings. He informed the court that he did not desire counsel. Defendant was thereupon sentenced.

Defendant alleges several assignments of error. Most of them are so clearly without merit that they do not require discussion. We discuss four.

Defendant's first assignment of error is that he did not knowingly and intelligently waive his right to counsel. This is simply not supported by the facts. Counsel was offered to the defendant at every critical stage of the proceedings. A psychiatric examination was ordered and completed. It disclosed no basis for any suspicion that defendant was mentally incompetent. Defendant had a right to proceed without counsel. He chose to do so and it is clear that his waiver of counsel was made knowingly and intelligently. State v. Escamilla, 182 Neb. 466, 155 N. W. 2d 344.

Defendant contends that his statement that the rifle

was loaded was erroneously admitted into evidence because there was no showing that the admonitions required in custodial interrogations were given, understood, and waived. See Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A. L. R. 3d 974. Defendant did not object to this testimony at the trial and he cannot claim error at this point. State v. Brown, 174 Neb. 387, 118 N. W. 2d 328. In any event, whether the rifle was loaded is not an essential element of the crime charged.

The pointing of an unloaded weapon at another is an assault, if the person aimed at does not know but that it is loaded, and has no reason to believe that it is not. While the statement to that effect in Ford v. State, 71 Neb. 246, 98 N. W. 807, 115 Am. S. R. 591, was not necessary to the decision in that case, we think that it is a correct statement of the law.

Defendant contends that the evidence was insufficient to find him a habitual criminal. He maintains that the record of his conviction in Lancaster County in 1952 on a charge of car theft is constitutionally defective in that it fails to show that he was advised of his right to counsel at public expense if he was indigent. The record received in evidence is a journal entry which recites in part that defendant appeared in court and waived "right of counsel" before entering a plea of guilty. Defendant made no objection to the introduction of this document into evidence.

In support of his contention defendant cites State v. Snell, 177 Neb. 396, 128 N. W. 2d 823. In that case, over the timely objection of the defendant, the State offered in evidence the defendant's plea of guilty at the preliminary examination on the charge for which he was then being tried in district court. At the preliminary examination in the county court the county attorney advised the defendant that he had a right to counsel and the defendant said "he didn't care for counsel." There was no evidence that the defendant was advised

that he was entitled to counsel at the expense of the State. We held that the admission of the plea of guilty into evidence at the trial in district court was prejudicial to the defendant because of the absence of counsel at the preliminary hearing and the failure of the record to show affirmatively an effective waiver of the right to counsel by the defendant.

The State contends that the failure of the defendant to object to the introduction into evidence of the journal entry forecloses the defendant from attacking the sufficiency of the conviction at this time. We agree. Section 29-2222, R. R. S. 1943, provides that a duly authenticated copy of the former judgment and commitment shall be competent and prima facie evidence of such former judgment and commitment in hearings under the Habitual Criminal Act. The record of a conviction is ordinarily sufficient as such if it shows that the court had jurisdiction of the crime and of the person. See cases annotated in 5 A. L. R. 2d 1080.

Such cases as Burgett v. Texas, 389 U. S. 109, 88 S. Ct. 258, 19 L. Ed. 2d 319, indicate quite clearly that in a habitual criminal proceeding a prior conviction is subject to attack on constitutional grounds, but that case implicitly recognizes that the attack must be made initially in the trial court, not on appeal.

We think the best approach to the problem is that demonstrated in People v. Merriam, 66 Cal. 2d 390, 58 Cal. Rptr. 1, 426 P. 2d 161. There the defendant on appeal for the first time contended that his prior conviction was void because of constitutional defects as to right of counsel. There, as here, the prior conviction was not challenged in the trial court on those or any other grounds. The Supreme Court of California held that the defendant's failure to raise the constitutional issue in the trial court precluded its consideration by the Supreme Court. The court stated that the burden of initiating inquiry into the constitutional basis of a prior conviction lies with him who would challenge its validity rather

than with the trial court. It is extremely difficult for the prosecution or the trial court to anticipate every constitutional objection to the sufficiency of a conviction, and it is manifestly unfair to allow a defendant who makes no objection to the sufficiency of a conviction in the trial court to urge some constitutional defect on appeal.

We hold that the failure of the defendant to initate inquiry into the constitutional basis of his prior conviction at or prior to its offer into evidence forecloses him from challenging its validity on an appeal to this court.

Defendant also contends that his conviction as a habitual criminal is invalid because he was improperly advised that the maximum term of imprisonment was 60 years. It is true that the amendment to section 29-2221, R. R. S. 1943, increasing the maximum term of imprisonment for a habitual criminal to 60 years from 20 years was not in effect at the time the defendant committed the act for which he was charged. The statement to the defendant that he was subject to a maximum term of imprisonment of 60 years instead of 20 years was incorrect. This, however, is obviously error without prejudice for the reason that the defendant was sentenced to the minimum term of 10 years. This is the minimum term under both the old and the new act.

Other errors assigned by the defendant are without merit and the judgment is affirmed.

AFFIRMED.