Catarino GONZALES, Jr., Appellee,

v.

Gary GRAMMER, Warden, State of Nebraska Penal Complex, Appellant.

Catarino GONZALES, Jr., Appellee,

v.

Gary GRAMMER, Warden, Nebraska State Penitentiary, Appellant.

No. 87–1472.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 10, 1988.

Decided June 7, 1988.

Rehearing Denied July 28, 1988.

William L. Howland, Asst. Atty. Gen., Lincoln, Neb., for appellant.

Robert Chapin, Lincoln, Neb., for appellee.

Before LAY, Chief Judge, and McMILLIAN and FAGG, Circuit Judges.

LAY, Chief Judge.

The State of Nebraska (the State) appeals from the federal district court's[1] decision to grant a writ of habeas corpus for

1. The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

Catarino Gonzales, Jr. Gonzales was convicted of burglary on September 8, 1983, and is currently incarcerated at the Nebraska State Penitentiary. Because Gonzales was determined to be a habitual criminal, he was sentenced to a term of not less than ten nor more than twelve years. Neb. Rev.Stat. § 29–2221 (Reissue 1985). On direct appeal, the Nebraska Supreme Court affirmed his conviction and sentence. *State v. Gonzales,* 218 Neb. 43, 352 N.W.2d 571 (1984).

In addition to pleading guilty to two counts of burglary in 1973, Gonzales pled guilty to one count of failure to appear on bond in 1975. In 1983, Gonzales was convicted of burglary in the District Court of Scotts Bluff County, Nebraska, and after the State entered proof of the two prior convictions, Gonzales was determined to be a habitual criminal. In the state court proceeding to determine his status as a habitual offender Gonzales unsuccessfully attacked the constitutionality of the 1973 and 1975 guilty pleas under *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

In considering Gonzales' challenge to his status as a habitual offender, the Nebraska Supreme Court observed that at the arraignments in 1973 and in 1975:

> [t]he record does not show in any of the arraignments that defendant was advised of each and all of the constitutional rights set out in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) and *State v. Tweedy,* 209 Neb. 649, 309 N.W.2d 94 (1981). For example, specific mention was not made of defendant's privilege against self-incrimination nor of his right to confront the witnesses against him.

*State v. Gonzales,* 218 Neb. at 49, 352 N.W.2d at 575.

Despite these deficiencies in accepting the earlier pleas, the Nebraska court asserted there was "substantial compliance with the ABA Standards Relating to Pleas

of Guilty"[2] and with the Nebraska Supreme Court's decision in *State v. Turner*, 186 Neb. 424, 425, 183 N.W.2d 763, 765 (1971). *State v. Gonzales*, 218 Neb. at 50, 352 N.W.2d at 575. The Nebraska Supreme Court acknowledged that the arraignment of Gonzales did not strictly comply with its later decision in *State v. Tweedy*, 209 Neb. 649, 309 N.W.2d 94 (1981). *Tweedy*, however, applied only to post–1981 pleas and, therefore, did not govern Gonzales' case.

Gonzales then petitioned the federal district court for habeas corpus relief. The federal district court granted Gonzales a writ of habeas corpus on the grounds that the 1973 and 1975 guilty pleas were not voluntary and informed as required under *Boykin*. On appeal, the State challenges the district court's issuance of the writ.

## I. Exhaustion

■ The State initially argues that the prior convictions must be challenged by direct appeal or in separate proceedings. In support of this argument, the State points to *State v. Soe*, 219 Neb. 797, 366 N.W.2d 439 (1985) (for enhancement proceedings, the State need show only that the defendant had counsel or waived the right to counsel at the prior conviction) and *State v. Baxter*, 218 Neb. 414, 355 N.W.2d 514 (1984) (attack on validity of judgment must be raised in direct appeal or in a separate proceeding).

■ While the general rule in Nebraska is that a defendant cannot relitigate former convictions, *State v. Smith*, 213 Neb. 446, 449, 329 N.W.2d 564, 566 (1983), the Nebraska Supreme Court expressly acknowledged in *State v. Gonzales*, 218 Neb. at 48, 352 N.W.2d at 575, that Gonzales "appropriate[ly]" introduced the transcripts of his earlier arraignments at the habitual criminal hearing and that Gonzales "properly" raised the issue of the validity of his earlier convictions at the hearing to determine his habitual criminal status. The Nebraska court thereafter reviewed the transcripts of the earlier proceedings. As observed, the state court held in *Turner* that strict compliance with *Boykin* was unnecessary. *State v. Gonzales*, 218 Neb. at 48, 352 N.W.2d at 575.[3] Because the Supreme Court of Nebraska has held that Gonzales was entitled to challenge his earlier convictions, and because the Nebraska court reviewed Gonzales' challenge under *Boykin*, Gonzales has sufficiently exhausted his state remedies. On these facts, Gonzales cannot be compelled to bring a separate collateral attack. *Cf. Engle v. Issac*, 456 U.S. 107, 130, 102 S.Ct. 1558, 1573, 71

---

**2.** The commentary to the ABA Standards For Criminal Justice states that:

In *Boykin v. Alabama*, the Supreme Court specified three "federal constitutional rights"—"the privilege against compulsory self-incrimination," "the right to trial by jury," and "the right to confront one's accusers"—waiver of which could not be presumed from a silent guilty plea record. In addition to requiring that the defendant be advised of these rights, this standard recommends that the defendant be told of additional constitutional rights that have been made applicable to the states, namely, the right to a speedy trial, the right to insist at a trial that proof of guilt be established beyond a reasonable doubt, and the right to present witnesses in one's own behalf through the use of compulsory process. The suggestion that the defendant be told of the right to testify at trial is to make certain that the defendant understands the right to take the witness stand if the defendant rejects the correlative right to remain silent.
Standards for Criminal Justice 14–1.4(a)(iv) (1980) (footnotes omitted).

**3.** Justice Boslaugh specifically concurred, stating that he was in disagreement "with the dicta which permits a defendant to collaterally attack a prior judgment in an enhancement proceeding." *State v. Gonzales*, 218 Neb. at 50, 352 N.W.2d at 576 (Boslaugh, J., concurring). A state is at liberty to set up whatever procedural requirements it deems necessary for processing challenges to prior convictions in a habitual criminal proceeding. Here the Nebraska Supreme Court not only commented that Gonzales properly challenged the constitutionality of his prior convictions but also the court affirmatively reviewed Gonzales' challenge on the merits in view of the earlier plea transcript. The court specifically held that Gonzales' prior convictions were not constitutionally infirm. Thus the petitioner has fully exhausted his state remedies and it would be a futile gesture for us to hold that Gonzales must once again return to state court and collaterally attack his earlier convictions.

L.Ed.2d 783 (1982); *Pickens v. Lockhart,* 714 F.2d 1455, 1464 n. 9 (8th Cir.1983).

## II. Voluntariness of the Plea

■ The State also argues that the district court erred in finding that the record did not establish that Gonzales' pleas were voluntary, knowing, and intelligent. Specifically, the State asserts that the Nebraska law applicable to the instant case does not require an express articulation of a defendant's rights. Gonzales responds by relying upon *Tweedy.*

In *Tweedy,* the Supreme Court of Nebraska stated:

> We therefore hold that no defendant may be imprisoned for any offense, whether a traffic infraction, misdemeanor, or felony, absent a knowing and intelligent waiver of his rights as provided for by the *Boykin–Turner* rule. That means that such defendants are entitled to be informed of the nature of the charges against them, the right to assistance of counsel, the right to confront witnesses against them, the right to a jury trial where otherwise authorized, and the privilege against self-incrimination. A voluntary and intelligent waiver of these rights must affirmatively appear from the record.

*State v. Tweedy,* 209 Neb. at 654–55, 309 N.W.2d at 98.

While the *Tweedy* decision expanded the requirements necessary for a voluntary and knowing plea to be entered, the court announced in *Tweedy* that the new rule applied only "after the date of the issuance of the mandate in this case." In the present case the Supreme Court of Nebraska acknowledged that Gonzales' guilty pleas in 1973 and 1975 did not satisfy the principles of *Tweedy.* Because *Tweedy* did not apply to pre–1981 proceedings, however, the Nebraska Supreme Court applied that court's decision in *Turner.* In *Turner,* the court had held that strict compliance with *Boykin* was unnecessary. Accordingly, the Nebraska Supreme Court found that Gonzales adequately understood his rights under *Boykin* and *Turner,* and, therefore, his earlier guilty pleas were constitutional.

The federal district court found the Nebraska Supreme Court's ruling to be in error and issued a writ of habeas corpus. In granting the writ, Judge Urbom reasoned: "I think the Supreme Court of Nebraska in the *Tweedy* case accurately interpreted the *Boykin* holding and that that interpretation is as valid for 1973 and 1975 pleas of guilty as for post–1981 pleas." *Gonzales v. Grammer,* 655 F.Supp. 1147, 1148 (D.Neb.1987). While we disagree with the federal district court's reasoning, we affirm the district court's decision to issue a writ of habeas corpus.

■ The Nebraska Supreme Court's refusal to apply the *Tweedy* mandate retroactively cannot be deemed constitutional error. We consider *Tweedy* 's refinement of *Turner* much as we perceive that *Halliday v. United States,* 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969) refined the application of *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). In *McCarthy,* the Supreme Court held that the district court's failure to comply with Federal Rule of Criminal Procedure 11 required the defendant's guilty plea to be set aside. *McCarthy,* 394 U.S. at 470–72, 89 S.Ct. at 1172–74. Because rule 11 was not deemed a constitutional requirement, the Supreme Court held in *Halliday* that *McCarthy* did not apply retroactively. The Nebraska Supreme Court recites its earlier decision in *Turner,* stating: "[t]his court has been reluctant to embrace unequivocally the specific holdings of *Boykin.* This requirement of an item-by-item review of constitutional rights on a guilty plea is a strained and a too extreme construction of those cases.'" *State v. Tweedy,* 209 Neb. at 652, 309 N.W. 2d at 96 (quoting *State v. Turner,* 186 Neb. at 425, 183 N.W.2d at 765). Subsequently this court and other circuits have similarly ruled that a line by line recitation of constitutional rights at a plea proceeding is not required by *Boykin* or due process. *Todd v. Lockhart,* 490 F.2d 626 (8th Cir.1974) (while the record did not establish that defendant was informed of his rights if he took the stand, the plea was not void per se because the state should have the opportu-

nity to establish that the plea was knowing). *See also Stacey v. Solem,* 801 F.2d 1048 (8th Cir.1986) (no particular litany of rights is required; thus where the defendant was not informed of his rights under *Boykin,* his plea remains valid if evidence establishes that he was adequately informed); *Griffith v. Wyrick,* 527 F.2d 109 (8th Cir.1975) (plea may still be constitutional even if record does not establish voluntariness in pleading guilty, and, the state has the burden to establish that the plea was voluntary, knowing, and intelligent); *Wilkins v. Erickson,* 505 F.2d 761 (9th Cir.1974) (*Boykin* does not require express articulation of rights where evidentiary hearings establish that the plea was voluntary and intelligent); *Wade v. Coiner,* 468 F.2d 1059 (4th Cir.1972).

Considering *Turner* and *Tweedy* in this light returns us to the focal issue as to whether Gonzales' 1973 and 1975 guilty pleas were constitutionally deficient. While we agree with much of the district court's reasoning, we feel compelled to review these guilty pleas not only in terms of *Boykin,* but with consideration of the subsequent directions of *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), and *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed. 2d 162 (1970), as well.

The Court in *Boykin* clearly listed those federal rights which could not be presumed to have been waived where the guilty plea record is silent:

> Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Second, is the right to trial by jury. Third, is the right to confront one's accusers. We cannot presume a waiver of these three important federal rights from a silent record.

*Boykin,* 395 U.S. at 243, 89 S.Ct. at 1712 (footnote and citations omitted).

The Court in *Boykin* also quoted from *McCarthy:*

> "A defendant who enters [a guilty plea] simultaneously waives several constitutional rights * * *. For this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.' *Johnson v. Zerbst,* 304 U.S. 458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461] (1938). Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void."

*Boykin,* 395 U.S. at 243 n. 5, 89 S.Ct. at 1712 n. 5 (quoting *McCarthy v. United States,* 394 U.S. at 466, 89 S.Ct. at 1171).

Refining the language in *Boykin,* the Court wrote in *Brady* that in order for a guilty plea to be valid it must be knowing, intelligent, and voluntary. Justice White wrote:

> But the plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial—a waiver of his right to trial before a jury or a judge. Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.

*Brady,* 397 U.S. at 748, 90 S.Ct. at 1469 (footnote omitted).

Because there was some confusion over what *Boykin* required, the Court explained in *Brady* that *Boykin* does not require an express and clear articulation of a defendant's constitutional rights. The Court expressed the new requirements resulting from *Boykin* in this way:

> The requirement that a plea of guilty must be intelligent and voluntary to be valid has long been recognized. The new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea *understandingly* and voluntarily.

*Brady,* 397 U.S. at 747 n. 4, 90 S.Ct. at 1468 n. 4 (emphasis added, citation omitted).

In *Alford* the Court reaffirmed its position that *Boykin* required merely that the

plea be voluntary, knowing, and intelligent; neither *Boykin* nor due process requires a listing of the defendant's constitutional rights. In *Alford* the Court observed:

> The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *See Boykin v. Alabama,* 395 U.S. 238, 242 [89 S.Ct. 1709, 1711, 23 L.Ed.2d 274] (1969); *Machibroda v. United States,* 368 U.S. 487, 493 [82 S.Ct. 510, 513, 7 L.Ed.2d 473] (1962); *Kercheval v. United States,* 274 U.S. 220, 223 [47 S.Ct. 582, 583, 71 L.Ed. 1009] (1927).

*North Carolina v. Alford,* 400 U.S. at 31, 91 S.Ct. at 164.

While we have studied developments from *Boykin* through *Alford,* Gonzales' guilty plea is distinct from that in *Boykin.* In *Boykin* there was a silent record (a clerk's summary) of the guilty plea, but in the instant case there is a transcript clearly setting forth the proceedings. A reading of the transcript of the two guilty plea proceedings at issue in this case is revealing. In the 1973 guilty plea proceeding, for example, Gonzales was informed by the trial judge of the right to a jury trial. Gonzales was also told what the permissible sentence would be, and, when Gonzales was asked about the voluntariness of the plea, he responded that there had been no threat or promise made to him. He stated he was pleading freely and voluntarily. When questioned concerning the crime of burglary, however, Gonzales denied that he entered the premises to steal anything. While he admitted going into the premises with a friend, Gonzales stated nothing was taken from either building. At the time of the plea, Gonzales was seventeen years old.

With respect to his conviction for failing to appear in 1975, Gonzales stated: "I wasn't told that I was supposed to show up in court by the sheriff or by my attorney." His attorney agreed that Gonzales was not served with a copy of the notice to appear because the attorney was unable to contact Gonzales. Thereafter the judge inquired of the county attorney whether the defendant "was really guilty under those circumstanc-

es." The county attorney then made vague reference to "some plea bargain arrangement" that "would allow the defendant to serve the sentence for failure to appear concurrently with his other sentence." There was also a vague reference to another pending case that had been dismissed. At this hearing Gonzales was nineteen years of age.

These proceedings strongly indicate that Gonzales was never notified by the State or his own attorney to appear, and that the State could not prove the criminal charge against Gonzales. There appears little constitutional sense or fairness in allowing a defendant to plead guilty to a felony of which he is not guilty simply because he will not serve any additional time. Of course, the plea bargain would have to be upheld if the district court found the defendant had legal counsel, the defendant was informed of his rights, and the record established that the defendant knowingly and intelligently made a voluntary plea of guilty. *See Mabry v. Johnson,* 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984). The record before us, however, does not support such a finding.

The following colloquy at the evidentiary hearing before Judge Urbom serves to confirm the correctness of his grant of the writ of habeas corpus. Counsel inquired:

> Q [counsel]. Now, getting back to July 18th, you were sentenced and were you also charged with another crime on July 18, 1975?
>
> A [Gonzales]. Yes.
>
> Q. And which crime was that?
>
> A. Failing to appear.
>
> Q. Okay. Now I'm going to ask you again: Did Mr. Hansen explain to you what the state needed to show to prove the crime of failure to appear?
>
> A. No, sir.
>
> Q. Did he explain to you what evidence the state had—
>
> A. No.
>
> Q. —to convict you?
>
> A. No, sir.
>
> Q. Did he explain to you any defenses that you may have?

A. No, the only thing that was explained to me was for me to plead guilty.

Q. And do you recall when that conversation took place?

A. Yeah, right in front of the desk, it was in front of the judge.

Q. Do you recall about how long that conversation lasted?

A. Well, just a few seconds because we just moved over to me.

Q. Okay. And in those few seconds did Mr. Hansen explain to you that you had a right to a jury trial?

A. No, sir.

Q. Did he explain to you that you had a right to confront the witnesses?

A. No, sir.

Q. Did he explain to you that you had a right not to make any self-incriminating statements?

A. No, sir.

Q. Did he indicate to you that by pleading guilty you would be waiving your self-incrimination right?

A. No, sir.

Q. Did he explain to you that you'd be waiving your right to a jury trial—

A. No, sir.

Q.—and your right to confront witnesses?

A. No, sir. All Mr. Hansen explained to me was for me to plead guilty, in so many words he said it would be easier on you, you know.

*Gonzales v. Grammer,* Nos. CV84–L–691, CV86–L–424, Transcript of Hearing on Habeas Corpus Petition at 12–14 (D.Neb. Feb. 17, 1987).

The case law is clear that for a plea to be a voluntary and an understanding one, it must be intelligently made. In weighing the uncertainty of Gonzales' pleas, the present record shows that it is impossible to ascertain whether the defendant understood his rights or whether he voluntarily or intelligently gave them up by pleading guilty. Gonzales' conclusory statement that he was making a voluntary, knowing, and intelligent guilty plea is directly contradicted by the record before us. *Cf. Fontaine v. United States,* 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973) (petitioner, who had earlier pled guilty to robbery, brought a 28 U.S.C. § 2254 challenge to his incarceration; where petitioner alleged that his plea was not voluntary, and underlying facts partially supported his allegations, mere fact that rule 11 was complied with does not bar possibility of relief under section 2254). As the district court noted, the State did not produce any evidence at the evidentiary hearing in federal court to indicate that the defendant's counsel had informed him of his rights during his 1973 or 1975 arraignments. There is no subsequent record to show that Gonzales may have had his rights explained to him before the arraignment. Nor is there any indication that Gonzales was informed what the State would have to prove in a trial, that Gonzales was told of his right to counsel at a jury trial, or that Gonzales was told of his right to confront the witnesses against him. We also note that the guilty plea proceeding took place at the time of the initial arraignment. According to the evidentiary record established in this federal habeas proceeding, it was only at the time of arraignment that Gonzales had brief contact with his court-appointed lawyer (the assistant public defender).[4] We find

---

**4.** Gonzales' testimony regarding the 1973 conviction was as follows:

Q. (By Mr. Chapin) [Gonzales' attorney]. * * * Catarino, let me ask you this: On January 8, 1973 were you charged with burglary?

A. Yes.

Q. And at that time were you represented by counsel?

A. Yes, sir.

Q. Okay. And that counsel is Mr. Hansen?

A. Yes, sir.

Q. Do you recall talking with Mr. Hansen about the charge?

A. I only spoke with Mr. Hansen twice during my incarceration there at the jail.

Q. Do you remember when that was?

A. Yes, sir.

Q. When was it?

A. Oh, one time was at the arraignment and second time was to make bond for bond reduction.

Q. Okay. Now, when you talk about arraignment is that when you entered your plea of guilty?

A. Yes, sir.

Q. Now, how long did Mr. Hansen talk to you prior to—how much did he inform you of

the abbreviated records of the 1973 and 1975 plea proceedings indicate that those pleas were not entered in accord with due process under the principles of *Boykin, Brady,* and *Alford.* In view of the factual circumstances surrounding the charges, we find Gonzales was not sufficiently informed of his constitutional rights. He was unable, therefore, to make an intelligent choice in pleading guilty at his 1973 and 1975 proceedings. We find no error in the district court's ruling that the prior guilty pleas were constitutionally invalid. The writ should be conditionally issued pursuant to the district court's order of March 1987.

the charges against you before you entered a plea?

A. Well, it was really no conversation over the charges being—that would be being pressed against me. I was advised by my counsel that—he didn't state whether there was any sufficient evidence or anything of that sort. He just asked me that if it would

be—it would look better for me that to plead guilty because if I pled guilty I'd have a better chance of probation and the presentence investigation or a lesser sentence.

*Gonzales v. Grammer,* Nos. CV84–L–691, CV86–L–424, Transcript of Hearing on Habeas Corpus Petition at 3–4.