STATE OF NEBRASKA, APPELLEE, V. NORMAN BRUCE OLIVER, APPELLANT.
434 N.W.2d 293

Filed January 13, 1989.    No. 87-940.

Dennis R. Keefe, Lancaster County Public Defender, and Sean J. Brennan for appellant.

Norman Langemach, Jr., Lincoln City Prosecutor, and Patrick A. Campbell for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

BOSLAUGH, J.

Upon a plea of guilty to driving while under the influence of alcoholic liquor, third offense, the defendant, Norman Bruce Oliver, was sentenced to 90 days in the county jail with credit for 30 days' time spent in inpatient treatment; he was fined $500; and his operator's license was suspended for 15 years. Upon appeal to the district court, the credit for 30 days' inpatient treatment was set aside, but the judgment in all other respects was affirmed.

The defendant has now appealed to this court and contends that the trial court erred in sentencing the defendant for a third offense because (1) the records of his previous convictions failed to show that his guilty pleas had been entered voluntarily and intelligently, and (2) the evidence as to one prior conviction failed to conform to the date of the prior conviction alleged in the complaint; and, also, that the district court erred (3) in modifying the sentence by eliminating the credit for inpatient treatment.

The complaints in this case alleged that the defendant had been convicted previously of the same offense occurring on October 17, 1980, and June 22, 1978. At the enhancement hearing on March 3, 1987, the State introduced certified copies of the records of previous convictions for offenses committed on June 22, 1978, and October 15, 1977. The defendant

objected to the evidence offered on the grounds of foundation and a bill then pending in the Legislature that would prevent convictions more than 10 years old from being used to enhance the penalty in such cases. These objections were overruled and the exhibits received in evidence. In the district court, the defendant argued that the records were not properly received because neither disclosed "full compliance with the Boykin Rights in Boykin versus Alabama."

With respect to the discrepancy between the date of one of the previous offenses as alleged in the complaint and the record offered at the enhancement hearing, in *State v. Silvacarvalho*, 193 Neb. 447, 227 N.W.2d 602 (1975), we held, "The exact time of the commission of an alleged prior felony is not of the essence of a charge under the Habitual Criminal Act and the failure of the information to accurately state the time of a prior felony does not render the information insufficient." (Syllabus of the court.)

In *State v. Jameson*, 224 Neb. 38, 395 N.W.2d 744 (1986), the complaint for driving while intoxicated, third offense, listed five previous convictions. At the enhancement hearing, evidence of five previous convictions was received, but the date of one offense differed from the date alleged in the complaint.

In affirming the judgment, we said at 43-46, 395 N.W.2d at 747-48:

> Jameson's third assignment of error is, likewise, without merit. He maintains that the previous convictions should not have been received in evidence, principally because the dates set out in the complaint did not correspond with the dates of the previous convictions. Unfortunately, the complaint alleged that *prior convictions* occurred on May 1, 1982, June 1, 1980, December 18, 1978, March 27, 1976, and July 17, 1974. While it is true that the convictions were entered on dates other than those listed in the complaint, the dates listed, other than the July 17, 1974, date, were in fact the dates on which each of the offenses was committed. The July 17, 1974, date was in error. However, in view of the fact that there were more than two prior convictions without the July 17, 1974, event, it may be disregarded. Jameson was

fully advised of the previous convictions the State intended to rely upon in proving that this was at least a third offense. Not only did the State seek to offer into evidence the prior convictions but in each instance introduced what appear to be the entire proceedings, including the complaint, any requests for continuances, and the judgment. In each instance the record reflects that Jameson was represented by counsel when he entered his plea to charges as set out in the complaint.

A reading of § 39-669.07 makes it clear that the substantive offense is driving while under the influence of alcohol or with more than .10 percent of alcohol in one's body fluid. The number of times a person has previously been convicted of such a charge is not itself a crime but, rather, is a factor which the trial court is to consider in imposing sentence. To that extent it is similar to our habitual criminal act, Neb. Rev. Stat. § 29-2221 (Reissue 1985). One is not sentenced for the crime of being a habitual criminal. Instead, the sentence imposed for violating some law of this state is enhanced because the defendant has previously been convicted. *State v. Rolling*, 209 Neb. 243, 307 N.W.2d 123 (1981). The same is true with regard to driving while under the influence of alcohol. See, also, *State v. Helgeson*, 235 Kan. 534, 680 P.2d 910 (1984); *State v. Nelson*, 178 Mont. 280, 583 P.2d 435 (1978); *State v. Carpenter*, 29 Or. App. 879, 565 P.2d 768 (1977).

And just as a wrong date in an information will not preclude a defendant from being sentenced as a habitual criminal if the record discloses the defendant could not have been misled or confused, so, too, a wrong date in a complaint will not preclude a defendant from being sentenced as one who has previously been convicted of driving while under the influence of alcohol if the record discloses that the defendant could not have been misled or confused.

In *State v. Harig*, 192 Neb. 49, 55-57, 218 N.W.2d 884, 889-90 (1974), we said: "[T]he Habitual Criminal Act does not create a new and separate criminal offense . . . but

provides merely that the repetition . . . aggravates the guilt and justifies greater punishment . . . . Under this act, the inaccurate allegation of the date or time of a prior felony would have no effect with respect to the sufficiency of the information as to its allegation of the principal or underlying felony or felonies. As to such felonies the time of a prior conviction is only a historical fact. . . .

. . . While it is undoubtedly desirable and helpful to have the dates of the prior felonies alleged in the information charging a defendant with being an habitual criminal, we do not find that the absence of such allegation would necessarily render the information invalid. . . . [I]t is necessary to read the provisions of the Habitual Criminal Act . . . with the provision of section 29-1501 . . .: 'No indictment shall be deemed invalid, nor shall the trial, judgment or other proceedings be stayed, arrested or in any manner affected . . . for omitting to state the time at which the offense was committed in any case where time is not the essence of the offense; nor for stating the time imperfectly . . . .' [U]nder Nebraska law, informations are generally subject to the same requirements as are indictments. . . . It is clear that the exact time of the commission of an alleged prior felony is not of the essence of a charge . . . and the failure of the information in this case to state accurately the time of a prior felony does not render that information insufficient . . . .

. . . This is not to say that evidence need not be presented to establish the exact time or date of the prior felony or felonies generally alleged. But we see no constitutional problems in this regard so long as means are and were provided for the defendant to obtain the information relative to the specific dates of the offenses relied upon as prior felonies. . . ."

In the instant case the record is clear that Jameson could not have been misled or confused. If anything, he was probably better informed by being told the date the offense was committed rather than the date of the conviction, which was delayed by Jameson's requests for

continuances. The claim of error is without merit.

In this case the defendant did not claim surprise or request a continuance, and we find there was no prejudice to any substantial right of the defendant.

With respect to the defendant's contention based upon *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), it has been the rule in this State that to prove a prior conviction for enhancement purposes, the State need only show that at the time of the prior conviction the defendant had, or waived, counsel. *State v. Slezak*, 226 Neb. 404, 411 N.W.2d 632 (1987). The records of the defendant's two previous convictions show that in each case the defendant was represented by counsel.

It has also been the rule in this State that a defendant cannot collaterally attack a prior conviction in an enhancement proceeding. *State v. Smith*, 213 Neb. 446, 329 N.W.2d 564 (1983). Objections to the validity of a prior conviction offered for the purpose of sentence enhancement, beyond the issue of whether the defendant had counsel or waived the right to counsel, constitute a collateral attack on the judgment, and must be raised either by a direct appeal from the prior conviction or in separate proceedings commenced expressly for the purpose of setting aside the prior conviction. *State v. Davis*, 224 Neb. 518, 398 N.W.2d 729 (1987). See, also, *State v. Foster*, 224 Neb. 267, 398 N.W.2d 101 (1986); *State v. Hamblin*, 223 Neb. 469, 390 N.W.2d 533 (1986); *State v. Benzel*, 220 Neb. 466, 370 N.W.2d 501 (1985); *State v. Soe*, 219 Neb. 797, 366 N.W.2d 439 (1985); *State v. Jones*, 219 Neb. 184, 362 N.W.2d 58 (1985); *State v. Baxter*, 218 Neb. 414, 355 N.W.2d 514 (1984); *State v. Ziemba*, 216 Neb. 612, 346 N.W.2d 208 (1984).

In *State v. Gonzales*, 218 Neb. 43, 352 N.W.2d 571 (1984), the defendant was allowed at the enhancement hearing to introduce verbatim transcripts of the arraignment proceedings at which the defendant had entered guilty pleas resulting in convictions which the State used to establish that the defendant was a habitual criminal. The transcripts of the arraignment proceedings showed that the defendant had not been advised of his constitutional rights as set out in the *Boykin* case and in *State v. Tweedy*, 209 Neb. 649, 309 N.W.2d 94 (1981). In the

*Gonzales* opinion, although the judgment was affirmed, we stated at 49, 352 N.W.2d at 575: "In this habitual criminal hearing, defendant had raised the constitutional invalidity of two of his prior convictions, and we hold he may raise these issues in this manner."

Then, in *Gonzales v. Grammer*, 655 F. Supp. 1147 (D. Neb. 1987), the U.S. District Court held that the defendant's prior pleas were not voluntary. Upon appeal, that judgment was affirmed. *Gonzales v. Grammer*, 848 F.2d 894 (8th Cir. 1988).

The court of appeals noted that in our opinion in the *Gonzales* case, we had held that Gonzales had "properly" raised the issue of the validity of his earlier convictions at the hearing to determine his habitual criminal status.

The court of appeals, however, also held, "A state is at liberty to set up whatever procedural requirements it deems necessary for processing challenges to prior convictions in a habitual criminal proceeding." 848 F.2d at 896 n.8.

Upon further consideration of the matter, we now expressly disapprove our holding in the *Gonzales* case that a defendant may raise the constitutional invalidity of a prior conviction in an enhancement proceeding, and now hold that such an issue may only be raised in a direct appeal or in a separate proceeding commenced for the express purpose of setting aside the judgment alleged to be invalid.

With respect to the defendant's last assignment of error, the minimum sentence under Neb. Rev. Stat. § 39-669.07 (Cum. Supp. 1986) for driving while under the influence of alcoholic liquor, third offense, if the defendant is not placed on probation, is imprisonment in the county jail for not less than 3 nor more than 6 months, and a fine of $500.

The credit against the statutory minimum sentence granted by the county court for inpatient treatment was erroneous, and it was within the power of the district court to modify the judgment by striking the illegal credit. When part of a sentence is illegal, an appellate court may, if the sentence is divisible, modify it by striking out the illegal part. *Kroger v. State*, 158 Neb. 73, 62 N.W.2d 312 (1954).

The judgment is affirmed.

AFFIRMED.

WHITE, J., dissenting.

I dissent from the portion of the majority's opinion that limits challenges to the constitutionality of a prior conviction at an enhancement hearing.

History in the area of the constitutionality of state procedures under recidivist statutes begins with *Burgett v. Texas*, 389 U.S. 109, 88 S. Ct. 258, 19 L. Ed. 2d 319 (1967). In *Burgett*, the Supreme Court held that an uncounseled prior conviction could not be used as the basis for enhancing a sentence pursuant to a state habitual criminal statute. The U.S. Supreme Court stated, 389 U.S. at 113-15:

> The States are free to provide such procedures as they choose, including rules of evidence, provided that none of them infringes a guarantee in the Federal Constitution. The recent right-to-counsel cases, starting with *Gideon v. Wainwright*, 372 U.S. 335, are illustrative of the limitations which the Constitution places on state criminal procedures. Those limitations sometimes touch rules of evidence.
>
> . . . .
>
> . . . [S]ince the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right.

While *Burgett* was limited to the use of uncounseled prior convictions in enhancing a sentence, broad language suggesting that any unconstitutional prior conviction cannot be the basis of an enhanced sentence is contained in *Burgett*. Additionally, a number of courts have relied on *Burgett* for that proposition. (See, e.g., *People v Harris*, 61 N.Y.2d 9, 459 N.E.2d 170, 471 N.Y.S.2d 61 (1983); *State v. Holsworth*, 93 Wash. 2d 148, 607 P.2d 845 (1980).)

The requirements in receiving guilty pleas that are now popularly termed *"Boykin* requirements" were developed by the U.S. Supreme Court in *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). *Boykin* established that several federal constitutional rights are involved in a waiver that occurs when a plea of guilty is entered in a state criminal trial. The three rights delineated in *Boykin* as particularly implicated in any plea of guilty are the privilege against compulsory

self-incrimination guaranteed by the 5th amendment and applicable to the states by reason of the 14th amendment, the right to a jury trial, and the right to confront one's accusers. "We cannot presume a waiver of these three important federal rights from a silent record." *Boykin*, 395 U.S. at 243. In *Boykin*, the U.S. Supreme Court stated that the requirements applicable to establish an effective waiver of the sixth amendment right to counsel apply with *equal force* to the rights waived when a guilty plea is accepted. As stated by the Court, 395 U.S. at 242-43:

> [A] plea of guilty is more than an admission of conduct; it is a conviction. Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality. The question of an effective waiver of a federal constitutional right in a proceeding is of course governed by federal standards.

*Boykin* stands for the proposition that all pleas accepted without evidence of compliance with the *Boykin* requirements, on the record, are constitutionally invalid. It therefore seems obvious that a conviction obtained without *Boykin* compliance, because invalid, cannot be used as the predicate conviction to support the imposition of an enhanced sentence under a recidivist statute.

Whether guilty pleas that have been obtained without complying with the requirements of *Boykin* can be used as the basis for enhancing a sentence has not affirmatively been decided by the Supreme Court. However, two U.S. Supreme Court opinions support the proposition that compliance with *Boykin* is required before a plea can be used to enhance a sentence under a recidivist statute. In *Baldasar v. Illinois*, 446 U.S. 222, 100 S. Ct. 1585, 64 L. Ed. 2d 169 (1980), a per curiam opinion, the Court held that an uncounseled misdemeanor conviction cannot be used under an enhanced penalty statute to convert a subsequent misdemeanor into a felony with a prison term. The Court, in the concurring opinion of Justice Marshall, stated, "[A] conviction which is invalid for purposes of imposing a sentence of imprisonment for the offense itself remains invalid for purposes of increasing a term of imprisonment for a subsequent conviction under a

repeat-offender statute." 446 U.S. at 228. Although four judges dissented, their dissent was based upon the fact that the prior uncounseled misdemeanor convictions were valid for the purposes of their own penalties as long as the defendant received no prison term. The Court distinguished between the use of these previously valid convictions and constitutionally invalid convictions being put to other uses in court.

Additionally, in *Marshall v. Lonberger*, 459 U.S. 422, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983), the U.S. Supreme Court discussed the applicability of *Boykin* to a case concerning the admissibility of a prior conviction to prove a "specification" in an aggravated murder conviction. The defense in *Marshall* alleged that the prior conviction was defective under *Boykin* and therefore inadmissible pursuant to *Burgett v. Texas*, 389 U.S. 109, 88 S. Ct. 258, 19 L. Ed. 2d 319 (1967). Although the Court upheld the admission of the prior conviction, its rationale was that the state court had determined *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), had been complied with, and the factual findings of a state court are to be accorded great deference in a federal habeas proceeding. The Court in *Marshall, supra,* reiterated that the governing standard determining whether a plea of guilty is voluntary is governed by federal law and did not contest the applicability of *Boykin* to prior convictions under an enhanced penalty statute.

This court, in *State v. Turner*, 186 Neb. 424, 183 N.W.2d 763 (1971), and *State v. Tweedy*, 209 Neb. 649, 309 N.W.2d 94 (1981), held that although strict compliance with *Boykin* is unnecessary, nonetheless, the requirements must be met before a plea can be accepted. Finally, in *State v. Gonzales*, 218 Neb. 43, 352 N.W.2d 571 (1984), in language the majority is disapproving today, we held that the constitutional validity of the defendant's prior convictions could be contested at the habitual criminal proceeding. However, *Gonzales* was not the first opinion by this court to hold that a challenge to a prior conviction could be raised at an enhancement proceeding. In *State v. McGhee*, 184 Neb. 352, 358, 167 N.W.2d 765, 769 (1969), we stated, "Such cases as Burgett v. Texas, 389 U.S. 109, 88 S. Ct. 258, 19 L. Ed. 2d 319, indicate quite clearly that in a

habitual criminal proceeding a prior conviction is subject to attack on constitutional grounds . . . ."

Although the eighth circuit, in *Gonzales v. Grammer*, 848 F.2d 894 (8th Cir. 1988), noted that a state can set up whatever procedural requirements necessary to process challenges to prior convictions in a habitual criminal proceeding, to the extent that this court sets up no procedure for processing the challenges in an enhancement proceeding, I believe the majority is in error.

As stated in *Burgett*, by utilizing an uninformed guilty plea in an enhancement proceeding, a violation of the defendant's constitutional rights is "renewed," which thus violates due process. This subsequent use of a constitutionally invalid conviction renews the constitutional violation. Although *Burgett* was concerned only with uncounseled pleas, there is no logical reason why un*Boykin*ized guilty pleas are any less violative of due process than uncounseled ones. As stated by the Supreme Court in *Boykin*, the requirements applicable to establish an effective waiver of the sixth amendment right to counsel apply with equal force to the rights waived when a guilty plea is accepted. By holding that constitutional challenges to the voluntariness of guilty pleas cannot be raised in enhancement proceedings, this court is according less deference to the constitutional rights infringed when a plea without *Boykin* is accepted than to the rights at issue when counsel is not afforded to the defendant. This is a distinction clearly not authorized by the U.S. Supreme Court.

The due process clause of the 14th amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Therefore, if a defendant is convicted with insufficient evidence, his or her 14th amendment rights are clearly implicated. Pursuant to Neb. Rev. Stat. § 39-669.07(3) (Cum. Supp. 1986), two or more valid convictions are a necessary element, and this requirement, therefore, must be proven by the State beyond a reasonable doubt. In this case, evidence was introduced suggesting that the prior pleas did not comply with *Boykin*. Perhaps because the

record is silent, those pleas are invalid. Accordingly, a conviction of driving while under the influence, third offense, would be based on insufficient evidence in violation of the 14th amendment.

I submit this cause should be remanded for resentencing and the State should be required to establish the constitutional validity of the prior convictions at the sentencing hearing before these convictions can be used as the basis for enhancing criminal penalties.

SHANAHAN, J., dissenting.

Notwithstanding the axiom that a conviction based on a defendant's plea is either constitutionally valid or invalid, the majority's opinion is somewhat a judicial shell game which requires a defendant to locate the procedural pellet for challenging the constitutionality of the defendant's prior plea-based conviction. Fundamental unfairness occurs, however, because there is no pellet to be uncovered.

The majority notes the statement in *Gonzales v. Grammer*, 848 F.2d 894, 896 n.3 (8th Cir. 1988): "A state is at liberty to set up whatever procedural requirements it deems necessary for processing challenges to prior convictions in a habitual criminal proceeding." From the preceding *Gonzales* excerpt, one may infer that, although a state's legislature or judiciary may fashion a particular procedure for a defendant's challenge to the constitutionality of a prior plea-based conviction used for an enhanced penalty, the state, nonetheless, is constitutionally obligated to have a method or means by which a defendant can litigate the constitutional validity of the prior plea-based conviction used for enhancement purposes. Whatever procedure a state provides, the procedure shall not infringe a constitutional guarantee. Thus, while a specific procedure to challenge the constitutionality of a prior guilty or no-contest plea rests within the state's discretion, a defendant's right to challenge a prior and constitutionally invalid plea is not a matter of the state's discretionary and procedural largess, but is a matter of due process which must be accorded a defendant who is subjected to a potential penalty or punishment through the criminal justice system. Nevertheless, from a launching pad of the federal footnote in *Gonzales*, the majority rockets to the

conclusion that constitutional validity of a defendant's prior plea-based conviction "may only be raised in a direct appeal or in a separate proceeding commenced for the express purpose of setting aside the judgment alleged to be invalid." The logical response is: What is the "separate proceeding" available to set aside the prior plea-based conviction?

While it may be an expression of the all-too-obvious, the majority does not judicially fashion a separate proceeding for a defendant's constitutional challenge to a prior plea-based conviction which is used for enhancement purposes. Rather, apart from mentioning a statutorily authorized direct appeal to test the constitutional validity of a conviction, the majority tacitly turns to the Legislature and Nebraska's statutes for a procedure enabling a defendant to question the constitutional validity of a prior plea-based conviction. Are there any Nebraska statutory proceedings for evaluation and resolution of a defendant's constitutional challenge to a prior plea-based conviction?

Is the majority alluding to a habeas corpus proceeding as the "separate proceeding commenced for the express purpose of setting aside" a defendant's previous conviction? According to Neb. Rev. Stat. § 29-2801 (Reissue 1985), an applicant or petitioner for a writ of habeas corpus must be a person who "is or shall be confined in any jail of this state, or [who] shall be unlawfully deprived of his or her liberty . . . ." To entitle the applicant-petitioner to a writ of habeas corpus, "there must be an actual confinement or the present means of enforcing it." *Spring v. Dahlman*, 34 Neb. 692, 693, 52 N.W. 567 (1892). The writ of habeas corpus, therefore, is unavailable to attack the constitutional validity of a defendant's prior plea-based conviction unless the defendant is incarcerated as the result of that prior conviction. The likelihood of a defendant's being incarcerated on account of a prior plea-based conviction, when a current prosecution involves an enhanced penalty based on such prior conviction, is mind-boggling, especially in cases of misdemeanor convictions. It is more probable, perhaps to the point of certainty, that a defendant, presently prosecuted, will have already served the sentence imposed as the result of the prior plea-based conviction, thereby disqualifying a previously

convicted defendant as an applicant-petitioner for a writ of habeas corpus.

Is the "separate proceeding," mentioned by the majority, a proceeding brought under the postconviction act, Neb. Rev. Stat. §§ 29-3001 et seq. (Reissue 1985)? Section 29-3001 provides that "[a] prisoner in custody under sentence . . . may file a verified motion [for postconviction relief]." In *State v. Moore*, 190 Neb. 271, 272, 207 N.W.2d 518, 519 (1973), this court stated: "The Post Conviction Act extends relief only to persons 'in custody.'" Consequently, a defendant who has served a sentence imposed as the result of a plea-based conviction to be constitutionally challenged, or who is not incarcerated on account of such conviction, is not entitled to request postconviction relief.

Perhaps the suggested "separate proceeding" is a motion for new trial pursuant to Neb. Rev. Stat. § 29-2101 (Reissue 1985). However, except in the case of newly discovered evidence, a motion for new trial must be filed within 10 days after verdict unless the defendant is "unavoidably prevented" from filing the motion. See Neb. Rev. Stat. § 29-2103 (Reissue 1985). In any event, as prescribed by § 29-2103, a motion for new trial "must be filed within three years after the date of such verdict." In virtually all cases, a defendant would be unable to utilize a motion for new trial to challenge a constitutionally invalid guilty or no-contest plea in reference to an enhancement proceeding because lapse of the specified time will have prevented opportunely filing the motion for new trial.

Maybe the majority is implying that a declaratory judgment action, authorized by Neb. Rev. Stat. §§ 25-21,149 et seq. (Reissue 1985), is the "separate proceeding" available to contest the constitutional validity of a prior plea-based conviction. Putting aside prodigious problems involving the statute of limitations, determination of necessary parties for the proceedings, and identification of a proper forum for the declaratory judgment action, assume that a defendant obtains a declaratory judgment that the plea on which the defendant's prior conviction is based was unconstitutionally obtained. What effect does the declaratory judgment have? The declaratory judgment would not operate to set aside the

previous plea-based conviction lest the declaring court act as an appellate court, reviewing and vacating another court's judgment in the absence of authority for appellate action. A declaratory judgment action is not a substitute for a new trial or appeal; a method of destroying proper exercise of power in a former action; authority for a second trial by the same parties on identical issues in different forums; or a justification for an unnecessary decision; and does not approve collateral attacks on former adjudications or operate to supersede former adjudications or proper proceedings already pending in court. See, *Moore v. Black*, 220 Neb. 122, 368 N.W.2d 488 (1985); *Zarybnicky v. County of Gage*, 196 Neb. 210, 241 N.W.2d 834 (1976); *Phelps County v. City of Holdrege*, 133 Neb. 139, 274 N.W. 483 (1937). Consequently, a defendant, having obtained a declaratory judgment that the defendant's prior plea was constitutionally invalid, would have to take the declaratory judgment to the court which accepted the plea in question. To what avail? One need not travel to the far boundaries of imagination to envision a judge's response on presentation of a judgment, entered by another court at the trial level, declaring the judge's prior convictional action void due to some judicial deficiency concerning a defendant's constitutional rights.

Additionally, in *Moore v. Black, supra*, we considered the absence of any procedure for appellate review of a judgment and stated:

> We have held that where no other method of appeal is provided, one may obtain judicial review by proceedings in error under [Neb. Rev. Stat. §§ 25-1901 et seq. (Reissue 1985). Citations omitted.] However, as in all appeals, the time requirements are mandatory and must be met in order for the appellate tribunal to acquire jurisdiction of the subject matter. . . .
>
> [Neb. Rev. Stat. § 25-1931 (Reissue 1985)] provides: "No proceedings for reversing, vacating, or modifying judgments or final orders shall be commenced unless within one calendar month after the rendition of the judgment or making of the final order complained of . . . ."

220 Neb. at 124-25, 368 N.W.2d at 490. Even the catchall error

proceedings will undoubtedly be unavailable for a defendant's challenge to a prior plea-based conviction.

It is indeed difficult, if not impossible, to elaborate all the questions and problems spawned in the majority's nondescript "separate proceeding," which, in the Churchillian characterization, is a "riddle wrapped in a mystery inside an enigma." The fact remains that, unless a defendant is incarcerated or has timely filed a motion for new trial, there is no Nebraska procedure, judicially fashioned or statutorily authorized, to accommodate a defendant's constitutional challenge to a prior plea-based conviction utilized for an enhanced penalty.

As expressed by the U.S. Supreme Court in *Boykin v. Alabama*, 395 U.S. 238, 243 n.5, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), regarding a guilty plea:

> "A defendant who enters such a plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.' *Johnson v. Zerbst*, 304 U.S. 458, 464 [58 S. Ct. 1019, 82 L. Ed. 1461] (1938). Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. . . ." [Quoting from *McCarthy v. United States*, 394 U.S. 459, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969).]

Thus, according to *Boykin*, a defendant's guilty plea which is not equally voluntary and knowing violates due process and is, therefore, void and a nullity. To paraphrase a well-known observation, void is void is void is void. Unless a defendant's direct appeal challenges a constitutionally invalid plea, the majority of this court permits the State to use a defendant's constitutionally invalid plea again and again for enhancement purposes. Cf. *Burgett v. Texas*, 389 U.S. 109, 115, 88 S. Ct. 258, 19 L. Ed. 2d 319 (1967): "[S]ince the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth

Amendment right." However, a challenge to a prior plea-based conviction, proposed to be used for sentence enhancement, is not restricted to the ground that the prior conviction was obtained in violation of a defendant's right to counsel, but may be based on violations of other constitutional rights, such as the rights mentioned in *Boykin*, namely, the rights to trial by jury, to remain silent, and to confront accusers. See *People v. Sumstine*, 36 Cal. 3d 909, 687 P.2d 904, 206 Cal. Rptr. 707 (1984). As a matter of due process required by the Nebraska and U.S. Constitutions, a prior plea-based conviction obtained in violation or denial of a constitutional right accorded an accused cannot be used in a subsequent criminal proceeding to establish the accused's guilt or support an enhanced punishment. See *Watkins v. People*, 655 P.2d 834 (Colo. 1983).

Correctly analyzed, the question raised in Oliver's case does not relate to a separate or collateral proceeding to set aside a prior conviction. Oliver's case involves what basically is an evidential principle based on, and demanded by, due process, namely, a challenge to the present use of a constitutionally invalid plea at a present sentence hearing. In an enhancement proceeding, a defendant's successful constitutional challenge to the validity of a prior plea-based conviction does not overturn the prior conviction, but results in exclusion or foreclosure of the prior plea-based conviction for the purpose of an enhanced penalty. See *State v. Holsworth*, 93 Wash. 2d 148, 607 P.2d 845 (1980). Therefore, challenging a prior plea-based conviction in a proceeding for an enhanced penalty is not a collateral attack to set aside the prior conviction alleged to be constitutionally invalid.

Further, in reference to prospective imposition of an enhanced penalty, the requirement of a separate proceeding to set aside a prior conviction based on a constitutionally invalid plea frustrates judicial economy and defeats efficient judicial administration in the criminal justice system. As a practicable procedure, the determination whether a defendant has previously entered a constitutionally valid guilty or no-contest plea, resulting in a conviction subsequently available for an enhanced penalty, should be a matter for the court in which the enhanced penalty is sought. This procedure would promote

judicial economy as well as furnish fundamental fairness necessary for due process. The constitutional right of due process is much too precious to languish in a legal labyrinth. In accordance with due process required in the criminal justice system, Oliver must be permitted to question the constitutional validity of his prior plea-based convictions used for imposition of an enhanced penalty. As a prerequisite for imposition of any enhanced penalty, the State has, and must satisfy, the burden to prove the constitutional validity of every prior plea-based conviction in the basis for an enhanced penalty. See *Watkins v. People, supra*. To that end, the sentence imposed on Oliver should be set aside, and these proceedings should be remanded for a sentence hearing at which Oliver may challenge the constitutional validity of every prior plea-based conviction in the basis for an enhanced penalty. As the result of the sentence hearing on remand, the appropriate sentence should be imposed on Oliver.