LARRY L. LEGRAND, APPELLANT, V. STATE OF NEBRASKA,
APPELLEE.

527 N.W.2d 203

Filed January 10, 1995.    Nos. A-93-1086, A-93-1087.

Robert Wm. Chapin, Jr., for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

CONNOLLY, IRWIN, and MILLER-LERMAN, Judges.

CONNOLLY, Judge.

Larry L. LeGrand appeals the judgment of the district court for Dodge County, which affirmed the decision of the Dodge County Court, which denied LeGrand's petitions in a "separate proceeding" to have two prior Dodge County convictions for driving while intoxicated (DWI) declared invalid. The convictions were to be used for the purpose of enhancing LeGrand's most recent DWI arrest, which took place in Lancaster County, to a third offense. We affirm the decision of the district court because under the holdings in *Custis v. U.S.*, ____ U.S. ____, 114 S. Ct. 1732, 128 L. Ed. 2d 517 (1994), and *Nichols v. U.S.*, ____ U.S. ____, 114 S. Ct. 1921, 128 L. Ed. 2d 745 (1994), the "separate proceeding" is not constitutionally mandated.

## I. BACKGROUND

On July 4, 1987, LeGrand was arrested in Dodge County and charged with a first-offense DWI. On August 11 the same year, LeGrand appeared with counsel for arraignment in Dodge County Court. A checklist form indicates that at that time, LeGrand was advised of the penalties for the offense and was informed of his privilege against self-incrimination; right to confront witnesses; right to a jury trial; right to counsel; and

right to due process, including proper notice and a fair and impartial hearing. LeGrand was also informed that upon a guilty plea he would effectively waive or forfeit the presumption of his innocence and all defenses available to him, thus relieving the State of the burden of proving his guilt beyond a reasonable doubt. LeGrand pled not guilty and requested a jury trial.

On September 18, 1987, LeGrand again appeared in Dodge County Court with his attorney and changed his plea on the DWI charge to guilty. The record indicates that the judge went through the same checklist used in the previous arraignment. This time, however, an additional paragraph containing the following language was checked:

Defendant advised the Court that he/she understood the nature of the charge(s), the possible penalties that might be imposed, and all rights available to him by law, and that this plea to the charge(s) was entered fully voluntar[il]y, knowingly, and intel[l]igently, with full understanding of the consequences. Upon inquiry by the Court, it was determined that there was a factual basis for the plea, that the necessary elements for the crime were met, and that the defendant had specifically committed the crime in question. The Court accepts the Defendant's plea and finds the Defendant guilty of the charge(s).

On October 13, 1987, LeGrand was sentenced for the DWI offense. Nothing in the record indicates that LeGrand appealed this conviction.

LeGrand was arrested and charged with his second DWI offense on October 12, 1990, in Dodge County. LeGrand appeared and was represented by counsel at his arraignment hearing on November 6. The county judge went through a checklist virtually identical to that used in the arraignment for the first DWI charge. LeGrand pled not guilty and requested a jury trial.

On February 19, 1991, LeGrand made another appearance in Dodge County Court, where, after being rearraigned, he pled guilty to the second DWI charge. Again, the county judge went through the checklist and checked the additional paragraph set out above. LeGrand was sentenced on March 26. Nothing in the

record indicates that LeGrand appealed this conviction.

LeGrand's petitions allege that he was recently arrested on a third DWI charge in Lancaster County. The record is not entirely clear, but apparently the prosecutor in the Lancaster County case wishes to use the two previous Dodge County convictions to enhance the offense in Lancaster County to a third-offense DWI under Neb. Rev. Stat. § 39-669.07 (Cum. Supp. 1992). In order to combat the Lancaster County prosecutor's attempt to enhance the charge, LeGrand filed two "Petition[s] in Separate Proceeding to Invalidate Convictions for Purposes of Enhancement" in Dodge County Court, alleging that the guilty pleas in the two prior Dodge County convictions were not based on a full advisement of LeGrand's constitutional rights as required by *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), and *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986).

LeGrand's petitions were denied by the county court. LeGrand appealed the county court decision to the district court for Dodge County, which affirmed the county court decision. These appeals followed. While these appeals were pending, the State filed a petition to bypass the Nebraska Court of Appeals. The Nebraska Supreme Court denied that petition.

## II. ASSIGNMENT OF ERROR

LeGrand argues that it was error for the district court to affirm the county court's decision overruling LeGrand's petitions in a "separate proceeding" to invalidate the two prior DWI convictions for the purposes of enhancement.

## III. STANDARD OF REVIEW

LeGrand's assignment of error presents a question of law. Regarding matters of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *State v. Roche, Inc.*, 246 Neb. 568, 520 N.W.2d 539 (1994); *State v. White*, 244 Neb. 577, 508 N.W.2d 554 (1993).

## IV. ANALYSIS

The concept of attacking prior convictions in enhancement proceedings has a complex history in Nebraska. These cases

require us to bring this convoluted saga to a swift and practical end. In light of the recent U.S. Supreme Court holdings in *Custis v. U.S.*, _____ U.S. _____, 114 S. Ct. 1732, 128 L. Ed. 2d 517 (1994), and *Nichols v. U.S.*, _____ U.S. _____, 114 S. Ct. 1921, 128 L. Ed. 2d 745 (1994), previous Nebraska Supreme Court decisions, holding that "separate proceedings" had to be available for defendants to challenge their prior convictions on *Boykin* grounds when those convictions were being used to enhance more recent crimes, are no longer compelling. Therefore, we hold that LeGrand's petitions to have his prior convictions declared invalid for the purposes of his impending enhancement proceedings should be dismissed.

### 1. HISTORY OF ATTACKS ON PRIOR CONVICTIONS IN NEBRASKA

(a) Groundwork: *Burgett v. Texas* and *Boykin v. Alabama*

For a long time it was questionable whether criminal defendants were allowed to make any kind of attack on their prior convictions outside of direct appeals. In *State v. Ninneman*, 179 Neb. 729, 140 N.W.2d 5 (1966), *cert. denied* 385 U.S. 838, 87 S. Ct. 85, 17 L. Ed. 2d 72, Justice Carter made the following observation:

> Defendant contends . . . that he was denied the right to obtain counsel in his first conviction in 1961, and that it was therefore void and not useable to prove that he was subject to the increased penalty for a second violation. The finality of the previous conviction is established. Defendant did not appeal nor seek redress by habeas corpus. In fact, he entered a plea of guilty and satisfied the penalty for the 1961 offense. I submit that under the existing law of this state he may not collaterally attack irregularities in his first conviction to avoid the increased penalties for the second.

*Id.* at 735, 140 N.W.2d at 8-9 (Carter, J., concurring in the result).

Justice Carter's analysis was brought into question when the U.S. Supreme Court rendered its decision in *Burgett v. Texas*, 389 U.S. 109, 88 S. Ct. 258, 19 L. Ed. 2d 319 (1967). In *Burgett*, the Court held that challenges to the validity of prior convictions in enhancement proceedings were permissible when

the prior conviction was allegedly invalid because the defendant was denied his Sixth Amendment right to counsel. A line of U.S. Supreme Court cases, beginning with *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963), had established a rule making it "unconstitutional to try a person for a felony in a state court unless he had a lawyer or had validly waived one." *Burgett v. Texas*, 389 U.S. at 114. The *Burgett* decision opened the door for attacks on prior convictions obtained in violation of *Gideon* when those convictions were being used to enhance the punishment for a more current conviction.

Two years later, the U.S. Supreme Court decided *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). Boykin had been arrested and charged with five counts of common-law robbery. The trial court appointed counsel to represent him, and 3 days later, at his arraignment, Boykin pled guilty to all five charges. The record did not reflect that the judge had asked any questions of Boykin regarding his plea, and Boykin never addressed the court. Boykin was sentenced to death on all five counts.

On direct appeal, the Alabama Supreme Court affirmed Boykin's convictions and sentences. The U.S. Supreme Court granted certiorari and reversed Boykin's convictions, holding that it was plain error for the trial judge "to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." 395 U.S. at 242. The Court further stated:

> What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought . . . and forestalls the spin-off of collateral proceedings that seek to probe murky memories.

(Citations omitted.) 395 U.S. at 243-44.

*Burgett* and *Boykin* form the basis of LeGrand's attack on his prior convictions in the cases at bar. *Burgett* mandated that

where the defendant was neither represented by nor waived counsel in a prior prosecution, the defendant could successfully attack the use of that prior conviction to enhance the punishment in a subsequent conviction. *Boykin* made clear that in order for a guilty plea to satisfy minimal constitutional requirements, the record had to show that the plea was intelligent and voluntary. Thus, it appeared that a defendant could challenge the use of prior convictions in enhancement proceedings when the prior convictions were obtained in violation of *Boykin*.

### (b) Evolution of *Boykin* Rule in Nebraska

Before turning to the issue of attacks on prior convictions in enhancement proceedings, we must first examine the status of the *Boykin* rule in Nebraska courts. In *State v. Turner*, 186 Neb. 424, 183 N.W.2d 763 (1971), the defendant challenged the validity of his guilty plea on *Boykin* grounds. Turner alleged on direct appeal that the record from the trial court failed to affirmatively show that he had entered his guilty plea voluntarily, understandingly, and intelligently and with full knowledge of the rights he was waiving by his plea. The Nebraska Supreme Court refused to read *Boykin* as requiring the trial court to affirmatively show that it had advised Turner of certain constitutional rights. Instead, the court held that *Boykin* "requires that a plea of guilty must not only be intelligent and voluntary to be valid but the record must affirmatively disclose that the defendant entered his plea understandingly and voluntarily." 186 Neb. at 425, 183 N.W.2d at 765.

The Nebraska Supreme Court set out a more detailed and somewhat expanded version of its reading of the *Boykin* rule in *State v. Tweedy*, 209 Neb. 649, 309 N.W.2d 94 (1981). After reviewing decisions from several other jurisdictions, the court stated:

> [N]o defendant may be imprisoned for any offense, whether a traffic infraction, misdemeanor, or felony, absent a knowing and intelligent waiver of his rights as provided for by the *Boykin-Turner* rule. That means that such defendants are entitled to be informed of the nature

of the charges against them, the right to assistance of counsel, the right to confront witnesses against them, the right to a jury trial where otherwise authorized, and the privilege against self-incrimination. A voluntary and intelligent waiver of these rights must affirmatively appear from the record.

209 Neb. at 654-55, 309 N.W.2d at 98.

However, questions remained even after *Tweedy*. In particular, it was still unclear what constituted an affirmative showing of a voluntary and intelligent waiver. The court addressed those concerns in the definitive decision *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986). There, the court held:

[I]n order to support a finding that a plea of guilty or nolo contendere has been entered freely, intelligently, voluntarily, and understandingly,

1. The court must

a. inform the defendant concerning (1) the nature of the charge; (2) the right to assistance of counsel; (3) the right to confront witnesses against the defendant; (4) the right to a jury trial; and (5) the privilege against self-incrimination; and

b. examine the defendant to determine that he or she understands the foregoing.

2. Additionally, the record must establish that

a. there is a factual basis for the plea; and

b. the defendant knew the range of penalties for the crime with which he or she is charged.

*Id*. at 820, 394 N.W.2d at 883.

Part 1a of the rule stated in *Irish* simply restated the *Tweedy* rule. Parts 1b and 2a and b added language which explained what constituted the requisite affirmative showing of compliance with *Boykin*. The rule as stated in *Irish* represents the definitive interpretation of the *Boykin* rule as adopted by the Nebraska Supreme Court. In the cases at bar, LeGrand alleges that the requirements of *Irish* were not met in his prior convictions.

### (c) *Boykin* Challenges to Prior Convictions

Before turning to our analysis in the cases at bar, it would be helpful to examine the historical development of *Boykin* challenges in *Burgett*-styled attacks on prior convictions.

### (i) Statutory Authority

The statutory provision governing enhancement proceedings in DWI cases is Neb. Rev. Stat. § 60-6,196 (Reissue 1993) (formerly § 39-669.07). Of particular relevance is § 60-6,196(3), which reads:

> For each conviction under this section, the court shall as part of the judgment of conviction make a finding on the record as to the number of the defendant's prior convictions under this section and under a city or village ordinance enacted pursuant to this section in the eight years prior to the date of the current conviction. The defendant shall be given the opportunity to review the record of his or her prior convictions, bring mitigating facts to the attention of the court prior to sentencing, *and make objections on the record regarding the validity of such prior convictions.*

(Emphasis supplied.)

This statutory provision is the basis for attacks on the validity of prior DWI convictions in enhancement proceedings in Nebraska, including the attack by "separate proceeding" implemented in the cases at bar.

### (ii) Chronological Development of Attacks on Prior Convictions in Enhancement Proceedings

### (a) No Attacks Allowed

In *State v. Voight*, 206 Neb. 829, 295 N.W.2d 112 (1980), the Nebraska Supreme Court was faced with a *Burgett* attack on a prior conviction in an enhancement proceeding on *Boykin* grounds under § 39-669.07 (Reissue 1978). Voight had been convicted of DWI. He was sentenced as a third-time offender after two prior convictions were received into evidence. On appeal, Voight argued that the prior convictions were improperly used to enhance his sentence because they were obtained in violation of *Boykin* and *State v. Turner*, 186 Neb.

424, 183 N.W.2d 763 (1971). The Nebraska Supreme Court refused to reach the merits of Voight's claim, holding that in an enhancement proceeding under § 39-669.07, the defendant could not collaterally attack his prior misdemeanor convictions. See, also, *State v. Kelly*, 212 Neb. 45, 321 N.W.2d 80 (1982) (expressly restating the *Voight* rule).

The *Voight* rule was tenuous because the U.S. Supreme Court had handed down its per curiam decision in *Baldasar v. Illinois*, 446 U.S. 222, 100 S. Ct. 1585, 64 L. Ed. 2d 169 (1980). In November 1975, Baldasar was arrested and charged with theft. The prosecutor sought to introduce a prior misdemeanor conviction in order to have Baldasar tried as a felon under the Illinois enhancement statute. Baldasar argued that the prior misdemeanor conviction should not have been admissible in the enhancement proceeding because he was not represented by counsel in the prior adjudication. The U.S. Supreme Court, without a clear majority, held that Baldasar's earlier conviction should not have been received into evidence in the enhancement proceeding, stating that Baldasar "was sentenced to an increased term of imprisonment *only* because he had been convicted in a previous prosecution in which he had *not* had the assistance of appointed counsel in his defense." (Emphasis in original.) 446 U.S. at 224 (Stewart, J., concurring).

### (b) General Objection Allowed When Sixth Amendment Right to Counsel Is at Issue

Based on the *Baldasar* decision, the Nebraska Supreme Court overruled *Voight* in *State v. Smith*, 213 Neb. 446, 329 N.W.2d 564 (1983). In *Smith*, the court reasserted the rule that a defendant could not relitigate, and therefore could not collaterally attack, prior convictions in an enhancement proceeding. However, the court stated that when a defendant was not shown to have waived or been represented by counsel at the prior prosecutions, the State could not meet its burden of proving the prior convictions. Thus, an objection to a prior conviction in enhancement proceedings did not constitute a collateral attack—instead, such an objection was treated as an evidentiary challenge which was valid to defeat the State's attempt to prove the prior conviction. Thus, the court in *Smith*

held that when a defendant objected to the introduction of a prior conviction which failed to show on its face that counsel was afforded or waived, the objection should be sustained.

Following the *Smith* decision, attempts to exclude prior convictions from use in enhancement proceedings on grounds other than not being afforded the Sixth Amendment right to counsel were unsuccessful. The Nebraska Supreme Court refused to consider such attacks and appeared to be strictly interpreting the *Smith* holding as being limited to instances where the record on its face failed to show that the defendant had been represented by or waived counsel. See, *State v. Davis*, 224 Neb. 518, 398 N.W.2d 729 (1987), *denial of habeas corpus rev'd on other grounds* 958 F.2d 831 (8th Cir. 1992); *State v. Hamblin*, 223 Neb. 469, 390 N.W.2d 533 (1986); *State v. Fraser*, 222 Neb. 862, 387 N.W.2d 695 (1986); *State v. Soe*, 219 Neb. 797, 366 N.W.2d 439 (1985).

### (c) Genesis of "Separate Proceeding"

A closer reading of *Davis* and *Fraser* unveils a slow erosion of the *Smith* rule. Each of those cases cites *State v. Baxter*, 218 Neb. 414, 355 N.W.2d 514 (1984), for the highlighted portion of the following proposition:

> The defendant argues that the *Smith* case stands for the proposition that a constitutionally invalid prior conviction cannot be used to enhance the penalty for a subsequent offense. The *Smith* case held that a transcript of conviction which fails to show on its face that counsel was afforded or the right waived cannot be used for enhancement purposes. Other objections to the validity of the judgment must be raised by direct appeal *or in a separate proceeding commenced for the express purpose of setting aside the judgment alleged to be invalid.*

(Emphasis supplied.) 218 Neb. at 416, 355 N.W.2d at 515-16.

The highlighted portion of the excerpt from *Baxter* referring to a "separate proceeding" had not appeared in previous decisions. The *Baxter* court cited no authority for the statement. The "separate proceeding" contemplated in *Baxter*, which the court endorsed in *Davis*, *Hamblin*, and *Fraser*, appears to be a direct affront to the narrow rule announced in

*Smith.* Yet none of the cases cited called *Smith* into question. Thus, the dicta in the *Baxter* decision appears to have been the legal origin for the "separate proceeding" we are faced with in the cases at bar.

### *(d) "Separate Proceeding" Entrenched*

The Supreme Court articulated the *Baxter* language as the definitive rule in *State v. Oliver*, 230 Neb. 864, 434 N.W.2d 293 (1989). *Oliver* was another DWI enhancement case where the defendant was attempting to have his prior convictions excluded on *Boykin* grounds. The *Oliver* court's initial concern was dealing with certain language used in *State v. Gonzales*, 218 Neb. 43, 352 N.W.2d 571 (1984), which indicated that it was proper for a defendant to raise a *Boykin* challenge to prior convictions in an enhancement proceeding by introducing verbatim transcripts of the prior prosecutions. In *Oliver*, the court expressly disapproved of the holding in *Gonzales* that a defendant could raise the constitutional invalidity of a prior conviction in an enhancement proceeding. Then, the *Oliver* court announced this rule: "[The constitutional invalidity of a prior conviction] may only be raised in a direct appeal or in a separate proceeding commenced for the express purpose of setting aside the judgment alleged to be invalid." 230 Neb. at 870, 434 N.W.2d at 298. Thus, the *Oliver* court definitively announced as law the "separate proceeding" phrase that apparently originated in *Baxter*.

The *Oliver* decision was called into question in a subsequent habeas corpus proceeding, *Oliver v. Spire*, No. CV89-L-149, 1989 WL 230917 (D. Neb. Sept. 10, 1990), where the federal district court found the rule announced by the Nebraska Supreme Court in *Oliver* ambiguous. The Nebraska Supreme Court attempted to further define the *Oliver* rule in *State v. Crane*, 240 Neb. 32, 480 N.W.2d 401 (1992). In *Crane*, the court stated that the federal court had misread the *Oliver* holding. The federal court had concluded that the *Oliver* rule was not clearly a procedural bar to relief. Instead, the federal court suggested that *Oliver* stood for the proposition that proof of the presence or waiver of counsel in a prior prosecution was enough to establish its constitutionality for use in an enhancement

proceeding. The court in *Crane* offered the following reply:

> We have repeatedly held that, as a procedural matter, a defendant cannot collaterally attack a prior conviction in an enhancement proceeding and that challenging a prior plea-based conviction based on the lack of a *Boykin*-type colloquy constitutes a collateral attack. . . . We do, however, allow challenges to prior plea-based convictions offered for enhancement purposes based on the transcript's failure to disclose whether the defendant had or waived counsel at the time the pleas were entered. . . . We do so because we do not regard such a challenge as a collateral attack on the former judgment. . . . One could also challenge the constitutional validity of a prior conviction through a separate proceeding, such as an action for declaratory judgment.

(Citations omitted.) 240 Neb. at 35, 480 N.W.2d at 403.

The *Crane* court further stated that the rule announced in *Oliver* was a *procedural* rule which barred collateral attacks in enhancement proceedings. The court still did not define "separate proceeding," other than suggesting that it could be an action for declaratory judgment.

### (e) First Use of "Separate Proceeding"

The first successful utilization of a "separate proceeding" to challenge the use of prior convictions in an enhancement proceeding on *Boykin* grounds occurred in *State v. Wiltshire*, 241 Neb. 817, 491 N.W.2d 324 (1992). In 1990, Wiltshire was convicted of DWI in Lancaster County. The State sought to enhance the conviction to a third offense by offering two prior DWI convictions. Wiltshire challenged the validity of his 1982 Lancaster County conviction by objection and by filing a " 'Petition for Relief in a Separate Proceeding.' " *Id*. at 824, 491 N.W.2d at 328. The trial court denied both requests for relief.

The Nebraska Supreme Court approved the trial court's decision overruling Wiltshire's objection on *Boykin* grounds, but reversed the trial court's decision overruling Wiltshire's " 'Petition for Relief in a Separate Proceeding.' " The court in *Wiltshire* held that the *Oliver* rule contemplated two tiers of

challenges to prior convictions in enhancement proceedings. The first tier comprised only challenges alleging that the defendant was neither represented by nor waived counsel at the prior prosecutions. A first-tier challenge could be made by a general objection, because, as stated in *State v. Smith*, 213 Neb. 446, 329 N.W.2d 564 (1983), such an objection was technically an argument that the State had failed to meet its burden of proving the prior conviction. Such an objection did not constitute a collateral attack.

The second tier of *Oliver* comprised challenges based on *Boykin* grounds. A second-tier challenge could not be made by general objection, because such an objection constituted a collateral attack on the prior conviction. To make a second-tier challenge, one had to raise the issue on " 'direct appeal or in a separate proceeding commenced for the express purpose of setting aside the judgment alleged to be invalid.' " *State v. Wiltshire*, 241 Neb. at 827, 491 N.W.2d at 330. Thus, Wiltshire's general objection on *Boykin* grounds was properly overruled. However, Wiltshire's petition for a "separate proceeding" was a proper vehicle for challenging a prior conviction on *Boykin* grounds and should have been considered by the trial court. On the merits, the court found that the 1982 conviction did not pass muster under *Boykin* and ordered the trial court not to consider the prior conviction in the enhancement proceeding.

### (iii) Current Rule Under Wiltshire

The *Wiltshire* decision was the latest major installment in the development of constitutional attacks on prior convictions in enhancement proceedings. Under *Wiltshire*, the well-established rule that collateral attacks on prior convictions are forbidden in enhancement proceedings remains technically intact. However, *Wiltshire* provides two avenues around the anti-collateral-attack rule. First, as mandated by *Burgett v. Texas*, 389 U.S. 109, 88 S. Ct. 258, 19 L. Ed. 2d 319 (1967), and *Baldasar v. Illinois*, 446 U.S. 222, 100 S. Ct. 1585, 64 L. Ed. 2d 169 (1980), a general objection on the grounds that the defendant was neither represented by nor waived counsel is valid. Second, a "separate proceeding," first recognized in

*State v. Baxter*, 218 Neb. 414, 355 N.W.2d 514 (1984), and then definitively adopted in *Oliver*, is a viable means of attacking prior convictions on *Boykin* grounds. The legal roots of the "separate proceeding" are unclear. The language appeared in *Baxter* with no citation to prior authority and was not necessary to decide the issues presented in *Baxter*. Regardless, the Nebraska Supreme Court continued to cite the *Baxter* language and eventually adopted it as the rule.

The cases at bar invite us to further define *Oliver* and *Wiltshire*. LeGrand was arrested and charged with DWI in Lancaster County. The prosecutor in that case now wants to enhance the charge to a third-offense DWI by introducing LeGrand's two prior DWI convictions from Dodge County. LeGrand challenged both prior convictions on *Boykin* grounds by filing petitions in a "separate proceeding" as instructed by *Wiltshire*. Thus, LeGrand has correctly challenged his prior convictions as far as *Wiltshire* takes him. However, these cases differ from *Wiltshire* and its predecessors in that LeGrand's adjudications involve two counties. LeGrand's prior convictions occurred in Dodge County. The current charge and enhancement proceeding are being tried in Lancaster County. LeGrand filed his petitions in a "separate proceeding" in Dodge County. Thus, the question LeGrand puts before us is, Which court is the proper venue for the "separate proceeding": the court where the allegedly invalid convictions were handed down, or the court where the enhancement proceeding is taking place? Our decision makes it unnecessary to reach that issue.

### 2. RECENT CASE LAW REGARDING ATTACKS ON PRIOR CONVICTIONS ON *BOYKIN* GROUNDS

Recent federal case law has raised serious questions regarding whether states must provide a procedure through which *Boykin* rights are protected in enhancement proceedings, see *Custis v. U.S.*, \_\_\_\_ U.S. \_\_\_\_, 114 S. Ct. 1732, 128 L. Ed. 2d 517 (1994), and whether states must allow defendants to challenge prior misdemeanor convictions where the defendant spent no time in prison as a result of the prior conviction, see *Nichols v. U.S.*, \_\_\_\_ U.S. \_\_\_\_, 114 S. Ct. 1921, 128 L. Ed. 2d 745 (1994). Our reading of these cases indicates that the

Nebraska "separate proceeding" is not constitutionally required. Therefore, we hold that a "separate proceeding" commenced expressly for the purpose of invalidating a prior conviction for use in an enhancement proceeding is no longer a valid means of raising a constitutional *Boykin* challenge to the prior conviction.

### (a) *Custis v. U.S.*

The primary case leading to the conclusion that the Nebraska "separate proceeding" is not constitutionally mandated is *Custis v. U.S., supra.* Custis was arrested in Maryland, where he was charged with three federal drug and firearm offenses. In federal district court, Custis was convicted by a jury on one of the charges, acquitted of two of the charges, and convicted of a lesser-included offense of one of the charges of which he was acquitted. The federal prosecutor then sought to enhance Custis' sentence under 18 U.S.C. § 924(e)(1) (1988) by using three prior state felony convictions: one from Pennsylvania and two from Maryland. Custis challenged the use of the Maryland convictions in the enhancement proceedings on *Boykin* grounds.

The U.S. Supreme Court affirmed the rulings of the district court and the U.S. Court of Appeals for the Fourth Circuit which denied Custis his requested relief, holding that the statute on which Custis based his challenge did not authorize collateral attacks on prior convictions. Custis argued that even if the statute did not authorize collateral attacks, the constitution required that a defendant have some procedural route through which prior convictions could be challenged in enhancement proceedings. The Supreme Court disagreed and held that such procedures were only required when an indigent defendant was denied his Sixth Amendment right to counsel.

The U.S. Supreme Court clearly stated that a violation of a defendant's *Boykin* rights did not reach the unique level of defect caused by a failure to provide counsel. Since the two types of constitutional rights were distinct, the Court refused to extend *Burgett v. Texas*, 389 U.S. 109, 88 S. Ct. 258, 19 L. Ed. 2d 319 (1967), beyond the scope of the Sixth Amendment right to counsel. In reaching its decision, the Court made the

following policy statement, which we find highly persuasive:

> Ease of administration also supports the distinction. As revealed in a number of the cases cited in this opinion, failure to appoint counsel at all will generally appear from the judgment roll itself, or from an accompanying minute order. But determination of claims of . . . failure to assure that a guilty plea was voluntary, would require sentencing courts to rummage through frequently nonexistent or difficult to obtain state court transcripts or records that may date from another era, and may come from any one of the 50 States.

> The interest in promoting the finality of judgments provides additional support for our constitutional conclusion. As we have explained, "[i]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures" and inevitably delay and impair the orderly administration of justice. . . . [P]rinciples of finality associated with habeas corpus actions apply with at least equal force when a defendant seeks to attack a previous conviction used for sentencing. By challenging the previous conviction, the defendant is asking a district court "to deprive [the] [state court judgment] of [its] normal force and effect in a proceeding that ha[s] an independent purpose other than to overturn the prior judgmen[t]." . . . These principles bear extra weight in cases in which the prior convictions, such as one challenged by Custis, are based on guilty pleas, because when a guilty plea is at issue, "the concern with finality served by the limitation on collateral attack has special force."

(Citations omitted.) *Custis v. United States*, 114 S. Ct. at 1738-39.

### (b) *Nichols v. U.S.*

Another U.S. Supreme Court case supporting our decision that the Nebraska "separate proceeding" is no longer constitutionally mandated is *Nichols v. U.S.*, ____ U.S. ____, 114 S. Ct. 1921, 128 L. Ed. 2d 745 (1994). Nichols pled guilty to federal felony drug charges. At sentencing, the prosecutor

sought to enhance Nichols' punishment under the federal sentencing guidelines by introducing a prior misdemeanor conviction for driving under the influence. Nichols objected to the use of the prior misdemeanor conviction on the grounds that he had not been afforded his Sixth Amendment right to counsel, in violation of *Burgett* and *Baldasar v. Illinois*, 446 U.S. 222, 100 S. Ct. 1585, 64 L. Ed. 2d 169 (1980).

The Court in *Nichols* expressly overruled *Baldasar* and held that a sentencing court may use a defendant's previous uncounseled misdemeanor conviction to enhance the sentence for a subsequent offense so long as the previous uncounseled misdemeanor conviction did not itself result in a sentence of imprisonment. Therein, the Court effectively limited the holding in *Burgett*. The modern reading of *Burgett*, as modified by *Nichols*, limits the opportunity to challenge prior convictions on Sixth Amendment right-to-counsel grounds to those cases where the prior offense resulted in a felony or misdemeanor conviction for which the defendant was imprisoned.

*Nichols* is important to our analysis in the cases at bar because, prior to recognizing the *Baldasar* decision, Nebraska courts did not allow attacks on prior convictions in enhancement proceedings. See *State v. Voight*, 206 Neb. 829, 295 N.W.2d 112 (1980). The holding in *State v. Smith*, 213 Neb. 446, 329 N.W.2d 564 (1983), which required that a defendant have the opportunity to attack a prior conviction on Sixth Amendment right-to-counsel grounds, was based on the Nebraska Supreme Court's reading of *Baldasar*. It appears that the Nebraska Supreme Court concluded that the *Smith* holding was necessary in order for Nebraska sentencing enhancement procedure to comply with federal constitutional law as stated in *Baldasar*. *Nichols* instructs that *Baldasar* need not be read that broadly.

### 3. EFFECT OF *CUSTIS* AND *NICHOLS* ON NEBRASKA "SEPARATE PROCEEDING"

The *Custis* and *Nichols* decisions are clear indications that the Nebraska "separate proceeding" is no longer constitutionally mandated. Furthermore, the reasoning of the

majority in *Custis* is most compelling. Collateral attacks on prior convictions in enhancement proceedings, like the Nebraska "separate proceeding," force the courts to address issues that should have been determined with finality long ago. In addition, the vague nature of the "separate proceeding" leaves many troubling procedural questions unanswered. The cases at bar are an example. Must the Lancaster County Court sit patiently and wait while LeGrand challenges convictions that are 4 and 7 years old before it can sentence him? In which court must the "separate proceeding" be brought? If the Lancaster County Court does sentence LeGrand now, what is the effect if the Dodge County Court decides that LeGrand's prior convictions were unconstitutionally obtained? Can a "separate proceeding" ever be brought on grounds other than *Boykin* violations? The "separate proceeding" concept requires answers to all of these questions.

■ The Nebraska Supreme Court has clearly stated that it will follow U.S. Supreme Court precedent recognizing the right to challenge the use of prior convictions for enhancement purposes. *State v. Wiltshire*, 241 Neb. 817, 491 N.W.2d 324 (1992). In *Wiltshire*, the court allowed "separate proceeding" attacks in enhancement proceedings based on a broad reading of the U.S. Supreme Court decisions in *Burgett, Baldasar*, and *Boykin*. Likewise, the *Smith* decision was based on a broad reading of *Baldasar*. In *Custis* and *Nichols*, the U.S. Supreme Court cast a bright light on this area of the law and clearly indicated that the states are free to allow *Boykin* challenges in enhancement proceedings, but we need not provide the "separate proceeding" in order to comport with federal constitutional law. Accordingly, we are required to take this opportunity to clarify the Nebraska procedure for enhancing sentences.

■ Consistent with the foregoing analysis, we hold that it is impermissible to attack the validity of a prior conviction in an enhancement proceeding on any grounds, with one exception: We do allow challenges to prior plea-based convictions offered for enhancement purposes based on the transcript's failure to disclose whether the defendant had or waived counsel at the time the pleas were entered, when the defendant was sentenced

to imprisonment for any period of time as a result of the pleas. We also note that, under *Custis* and *Nichols,* our holding expands beyond the scope of DWI enhancement proceedings and covers enhancement proceedings under other recidivist statutes.

## V. CONCLUSION

We affirm the district court's decision to affirm the decision of the county court, which overruled LeGrand's "Petition[s] in Separate Proceeding to Invalidate Convictions for the Purposes of Enhancement." Under *Custis* and *Nichols,* the "separate proceeding" is not constitutionally mandated and therefore is no longer a viable method of challenging prior convictions in enhancement proceedings.

AFFIRMED.