STATE OF NEBRASKA, APPELLEE,
V. RICKY R. DAVENPORT, APPELLANT.
559 N.W.2d 783

Filed January 21, 1997.   Nos. A-95-1311, A-95-1312.

Ricky R. Davenport, pro se.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

IRWIN, SIEVERS, and INBODY, Judges.

IRWIN, Judge.

## I. INTRODUCTION

In 1993, Ricky R. Davenport was convicted of manslaughter, use of a firearm to commit a felony, and possession of a firearm

by a felon. He was found to be a habitual criminal because of prior felony convictions in 1986 and 1988. After this determination, he received enhanced sentences of imprisonment of 25 years for manslaughter, 20 years for use of a firearm to commit a felony, and 20 years for possession of a firearm by a felon, sentences to be served consecutively.

In 1995, Davenport filed two "Petition[s] for Relief in a Separate Proceeding" in the district court for Douglas County. These petitions are the subject of the instant appeal. Davenport's petitions challenged the validity of the two prior felony convictions in 1986 and 1988 and their use to enhance his sentences relating to his 1993 convictions. His petitions allege that these prior felony convictions are constitutionally invalid for reasons other than the denial of his Sixth Amendment right to counsel and, thus, are characterized as second-tier attacks for challenging the validity of prior convictions used for enhancement of sentences. See *State v. LeGrand*, 249 Neb. 1, 541 N.W.2d 380 (1995). The two cases arising from these petitions were consolidated in the district court as well as for the present appeal. For the reasons stated below, we conclude that Davenport cannot commence these separate proceedings regarding his 1986 and 1988 felony convictions after they have already been used as a basis to find him to be a habitual criminal and after an enhanced sentence has been imposed.

## II. FACTUAL BACKGROUND

On June 10, 1993, Davenport was charged in the district court for Douglas County in an amended information with second degree murder, Neb. Rev. Stat. § 28-304 (Reissue 1995); use of a firearm to commit a felony, Neb. Rev. Stat. § 28-1205 (Reissue 1989); possession of a firearm by a felon, Neb. Rev. Stat. § 28-1206 (Reissue 1989); and being a habitual criminal, Neb. Rev. Stat. § 29-2221 (Reissue 1989). On August 20, a jury found Davenport guilty of manslaughter, Neb. Rev. Stat. § 28-305 (Reissue 1995); use of a firearm to commit a felony, § 28-1205; and possession of a firearm by a felon, § 28-1206.

An enhancement hearing was held on October 8, 1993, prior to Davenport's sentencing. The State offered two prior convictions in Douglas County. The first was a June 20, 1986, convic-

tion following a guilty plea to unlawful possession of a firearm by a felon, for which Davenport was sentenced to 1½ years' imprisonment. The second was a November 18, 1988, conviction following a guilty plea to two counts of unlawful possession of a controlled substance, for which Davenport was sentenced to concurrent sentences of 20 to 40 months' imprisonment. The sentences for these prior convictions had been served prior to the filing of the petitions for separate proceedings on appeal before us. Based on these prior convictions, the district court found Davenport to be a habitual criminal.

On December 3, 1993, the district court sentenced Davenport to terms of imprisonment of 25 years for manslaughter, 20 years for use of a firearm in the commission of a felony, and 20 years for possession of a firearm by a felon. These sentences were to be served consecutively. The convictions and sentences were affirmed by a panel of this court in an unpublished opinion filed November 15, 1994. *State v. Davenport*, 94 NCA No. 45, case No. A-94-009 (not designated for permanent publication).

On August 30, 1995, Davenport filed the two "Petition[s] for Relief in a Separate Proceeding" (hereinafter petitions) in the district court for Douglas County. One petition challenged the 1988 conviction. Davenport generally alleged that the conviction was constitutionally invalid and void because his counsel failed to object to improper information contained in the presentence report; because the improper information contained in the presentence report violated due process, equal protection, and his right to freedom of association; and because he was not properly advised of his constitutional rights and did not intelligently, voluntarily, and knowingly waive his rights at the time of his guilty plea. In Davenport's other petition, challenging the 1986 conviction, he made the same general allegations as set forth above.

In a "Memorandum & Order" filed November 21, 1995, the district court characterized Davenport's petitions as "applications for post-conviction relief." After examining the substantive allegations contained in the petitions, the district court denied the petitions without an evidentiary hearing, instead, relying on the files and records of the case. Thereafter, Davenport timely appealed each case. A petition for bypass

filed with the Nebraska Supreme Court was denied on October 2, 1996.

### III. ASSIGNMENTS OF ERROR

The only assigned error necessary to dispose of this case is that the district court erred in not finding Davenport's prior felony convictions were constitutionally invalid on second-tier grounds for challenging the validity of prior convictions used for enhancement of his sentences.

### IV. STANDARD OF REVIEW

■ Regarding matters of law, an appellate court must reach a conclusion independent of that of the lower court. *State v. Bowers*, 250 Neb. 151, 548 N.W.2d 725 (1996); *State v. Conklin*, 249 Neb. 727, 545 N.W.2d 101 (1996).

### V. ANALYSIS

1. CHARACTERIZATION OF PETITIONS

Initially, we address the district court's characterization of Davenport's petitions as "applications for post-conviction relief" pursuant to Nebraska's postconviction statutes, Neb. Rev. Stat. § 29-3001 et seq. (Reissue 1995). It is clear from a reading of Davenport's petitions that he is not seeking postconviction relief as contemplated under the statutes, but, rather, is initiating separate proceedings to challenge prior convictions as contemplated in *State v. LeGrand*, 249 Neb. 1, 541 N.W.2d 380 (1995); *State v. Wiltshire*, 241 Neb. 817, 491 N.W.2d 324 (1992); and other related cases. As a result, the district court's characterization and subsequent treatment of the petitions were incorrect.

2. SEPARATE PROCEEDINGS

We turn to Davenport's assigned error. Davenport contends that his prior convictions from 1986 and 1988 are constitutionally invalid and should not have been used to enhance his 1993 convictions. The State argues that Davenport's present actions are untimely, since Davenport did not file his separate proceeding until after he was determined to be a habitual criminal and after his enhanced sentences were imposed. We note that the sit-

uation before us is different from those presented in *State v. LeGrand, supra,* and *Custis v. United States,* 511 U.S. 485, 114 S. Ct. 1732, 128 L. Ed. 2d 517 (1994), which will be discussed below. In those cases, the objection to the prior conviction or the separate proceedings challenging the prior conviction were made or filed before the enhancement hearing and before the enhanced sentence was imposed.

(a) Review of Relevant Case Law

We briefly review Nebraska jurisprudence regarding challenges to the validity of prior convictions used for enhancement. ▉ The Nebraska Supreme Court has established what is referred to as a two-tiered system for challenging the validity of prior convictions used for enhancement. See *State v. Wiltshire, supra.* In a first-tier challenge, a defendant may challenge a prior conviction during the enhancement proceeding itself if the record does not show whether the defendant was represented by counsel or properly waived counsel. *State v. Wiltshire, supra*; *State v. Smith,* 213 Neb. 446, 329 N.W.2d 564 (1983). See, also, *State v. Orduna,* 250 Neb. 602, 550 N.W.2d 356 (1996); *State v. LeGrand, supra.* In a second-tier challenge, a defendant may attack the validity of a prior conviction on other constitutional grounds in a direct appeal or "in a separate proceeding commenced for the express purpose of setting aside the judgment alleged to be invalid." *State v. Oliver,* 230 Neb. 864, 870, 434 N.W.2d 293, 298 (1989). See, also, *State v. LeGrand, supra*; *State v. Wiltshire, supra.*

The necessity for the two-tiered system was uncertain following the U.S. Supreme Court's decision in *Custis v. United States, supra.* In *Custis,* the Court addressed whether the federal Constitution requires any procedure through which second-tier constitutional rights are protected in enhancement proceedings. After Custis was convicted for federal drug and firearm offenses, the federal prosecutor sought to enhance his sentence under 18 U.S.C. § 924(e)(1) (1994) by using three prior state felony convictions. Custis challenged the use of two of these convictions in the enhancement proceedings.

The *Custis* Court affirmed the rulings of the lower courts denying relief. It held that the statute on which Custis based his

challenge did not authorize collateral attacks on prior convictions and that the federal Constitution requires only a procedure through which a defendant can challenge prior convictions used for enhancement purposes if the defendant was denied his or her Sixth Amendment right to counsel. In *Custis*, the Court distinguished the right to counsel from other constitutional guarantees of an accused.

In reaching its decision, the Court made the following policy statement:

> Ease of administration also supports the distinction. As revealed in a number of the cases cited in this opinion, failure to appoint counsel at all will generally appear from the judgment roll itself, or from an accompanying minute order. But determination of claims of ineffective assistance of counsel, and failure to assure that a guilty plea was voluntary, would require sentencing courts to rummage through frequently nonexistent or difficult to obtain state-court transcripts or records that may date from another era, and may come from any one of the 50 States.

> The interest in promoting the finality of judgments provides additional support for our constitutional conclusion. As we have explained, "[i]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures" and inevitably delay and impair the orderly administration of justice. . . . [P]rinciples of finality associated with habeas corpus actions apply with at least equal force when a defendant seeks to attack a previous conviction used for sentencing. By challenging the previous conviction, the defendant is asking a district court "to deprive [the] [state-court judgment] of [its] normal force and effect in a proceeding that ha[s] an independent purpose other than to overturn the prior judgmen[t]." . . . These principles bear extra weight in cases in which the prior convictions, such as one challenged by Custis, are based on guilty pleas, because when a guilty plea is at issue, "the concern with finality served by the limitation on collateral attack has special force."

*Custis v. United States*, 511 U.S. 485, 496-97, 114 S. Ct. 1732, 128 L. Ed. 2d 517 (1994).

Subsequently, in *LeGrand v. State*, 3 Neb. App. 300, 527 N.W.2d 203 (1995), a defendant commenced a separate proceeding to challenge two prior driving while intoxicated convictions which a prosecutor wanted to use to enhance a driving while intoxicated conviction to third offense. Based upon the *Custis* holding, a panel of this court held it impermissible to attack the validity of a prior conviction sought to be used for enhancement on any grounds except "the transcript's failure to disclose whether the defendant had or waived counsel at the time the pleas were entered, when the defendant was sentenced to imprisonment . . . ." 3 Neb. App. at 318-19, 527 N.W.2d at 213.

On further review, the Nebraska Supreme Court reversed the judgment of the Court of Appeals. *State v. LeGrand*, 249 Neb. 1, 541 N.W.2d 380 (1995). The court held:

> Without separate proceedings, a defendant in a state case, who is not in custody, has no other forum to challenge a constitutionally infirm judgment *sought to be used* for sentence enhancement. With this in mind, we reaffirm our holdings . . . that separate proceedings are a valid means to collaterally attack allegedly constitutionally invalid prior convictions used for sentence enhancement.

(Emphasis supplied.) *Id.* at 9, 541 N.W.2d at 386. In so holding, the court afforded more protection under our state Constitution to defendants such as LeGrand than is required under the federal Constitution. See *id.* (recognizing that states may afford greater due process protection under their state constitutions than is granted by federal Constitution).

(b) Timeliness Issue

Davenport's challenges to his 1986 and 1988 prior convictions as set forth in his petitions attack the information upon which his sentences were based and the validity of his guilty pleas. His petitions make no reference to a failure to provide counsel. If determined to be timely, Davenport's challenges were properly brought as separate proceedings, since they constitute a second-tier attack. See, *State v. LeGrand, supra*; *State v. Wiltshire*, 241 Neb. 817, 491 N.W.2d 324 (1992); *State v. Oliver*, 230 Neb. 864, 434 N.W.2d 293 (1989). The question

before us is whether Davenport may initiate a separate proceeding raising second-tier challenges to prior convictions that were used to determine that he is a habitual criminal after the habitual determination has been made and after his enhanced sentences have been imposed.

We find no Nebraska case law discussing when a separate proceeding may be initiated in a situation such as this before us. In our review of reported cases in Nebraska, the separate proceedings challenging prior convictions were initiated before the defendant was found to be a habitual criminal and before the enhanced sentence was imposed. See, e.g., *State v. LeGrand, supra*; *State v. Wiltshire, supra*. The Nebraska Supreme Court's holding in *LeGrand* that our state Constitution requires a defendant be provided a procedure to bring a second-tier attack on a prior conviction arises from a factual situation in which the second-tier attack was brought before the prior conviction was used to enhance his offense to third-offense driving while intoxicated and before the enhanced sentence was imposed. The Nebraska Supreme Court has not been presented with the factual scenario now before us.

■ We recognize that in *LeGrand*, the Nebraska Supreme Court stated that a "void judgment may be set aside at any time and in any proceeding." 249 Neb. at 7, 541 N.W.2d at 385. However, Nebraska case law reveals that there are exceptions to this general proposition. For instance, a defendant cannot collaterally attack a prior uncounseled misdemeanor conviction for which he or she was not sentenced to imprisonment. *Nichols v. United States*, 511 U.S. 738, 114 S. Ct. 1921, 128 L. Ed. 2d 745 (1994); *State v. Jackson*, 4 Neb. App. 413, 544 N.W.2d 379 (1996). See *State v. Austin*, 219 Neb. 420, 363 N.W.2d 397 (1985) (holding on direct appeal of misdemeanor conviction for which no imprisonment was imposed that defendant was not entitled to appointed counsel under the 6th and 14th Amendments). In addition, a defendant cannot challenge a prior conviction on second-tier grounds at an enhancement hearing. *State v. LeGrand, supra*; *State v. Wiltshire, supra*; *State v. Crane*, 240 Neb. 32, 480 N.W.2d 401 (1992).

Furthermore, although the Nebraska Supreme Court was not presented in *State v. LeGrand*, 249 Neb. 1, 9, 541 N.W.2d 380,

386 (1995), with the timing question now before us, it did state that separate proceedings are the only forum for a defendant to challenge a prior conviction "sought to be used" for sentence enhancement. This language suggests that the time to commence a separate proceeding is before, not after, an enhanced sentence is imposed.

In our research, we discovered a line of cases in the Kentucky appellate courts that squarely addresses the timing issue before us. The Kentucky Supreme Court has repeatedly held that if a defendant fails to raise issues regarding the validity of a prior conviction at the time he or she is tried as a "persistent felon," he or she is "precluded from contesting the validity of the earlier convictions in subsequent post-conviction proceedings." *Alvey v. Com.*, 648 S.W.2d 858, 859 (Ky. 1983). See, also, *Com. v. Gadd*, 665 S.W.2d 915 (Ky. 1984); *Copeland v. Com.*, 415 S.W.2d 842 (Ky. 1967); *Ray v. Com.*, 633 S.W.2d 71 (Ky. App. 1982). *Alvey* and the other Kentucky cases cited above predate the *Custis* decision and obviously do not rely on it.

In *Alvey*, the Kentucky Supreme Court reasoned:

> There is a substantial difference between a situation in which the record in a guilty plea proceeding does not pass constitutional muster, and one in which post-conviction proceedings are filed after a defendant has already had an opportunity to raise issues about the validity of earlier guilty pleas but has failed to do so. In the latter instance we should not afford the defendant a second bite at the apple.

648 S.W.2d at 860. Likewise, Davenport had the opportunity to file a separate proceeding raising his second-tier attacks of his 1986 and 1988 convictions prior to, or at the time of, his enhancement proceedings following his 1993 convictions.

In deciding the issue before us, we recall the principles of finality and judicial economy relied upon by the U.S. Supreme Court in deciding *Custis v. United States*, 511 U.S. 485, 114 S. Ct. 1732, 128 L. Ed. 2d 517 (1994). These principles apply with particular force to the situation before us wherein Davenport challenged the validity of his prior convictions after the district court found him to be a habitual criminal based on those prior convictions and after it imposed the enhanced sentences. To

allow Davenport to file separate proceedings at this point would create a legal maelstrom in our criminal justice system. The concept of finality requires a defendant to decide whether to raise a second-tier challenge to a prior conviction well before Davenport filed his petitions in the instant case.

## VI. CONCLUSION

■ Based on the facts before us, we conclude that Davenport cannot commence separate proceedings which raise his second-tier collateral attacks after he was found to be a habitual criminal based on prior convictions and after his enhanced sentences were imposed. We affirm the judgment of the district court.

AFFIRMED.